## NORWICH UNION INDEMNITY CO. v. DAVIS et al. (No. 2793.)

Court of Civil Appeals of Texas. Amarillo. March 23, 1927.

Rehearing Denied April 27, 1927.

**1. Master and servant ⊙⇒401—Physician's testimony relative to stiffness in ankle of injured employee, resulting from placing leg in plaster cast held admissible as within pleadings (Workmen's Compensation Law).**

In suit to set aside an award of compensation by the Industrial Accident Board in proceeding under the Workmen's Compensation Law (Rev. St. 1925, art. 8306), testimony of physician relative to stiffness in employee's ankle, resulting from inability to use leg while in plaster cast after operation to effect a union of broken bones, *held* properly admitted as against contention that such testimony tended to prove injuries other than alleged, in absence of showing that placing leg in plaster cast was improper, or that treatment was not carefully and successfully carried out.

**2. Master and servant ⊙⇒401—Testimony that employee's injured leg was shortened as result of necessary operations held admissible as within pleadings.**

Testimony, in suit to set aside compensation award, that employee's injured leg was shortened as result of necessary operations performed thereon, *held* admissible as against contention that such injury was not pleaded.

**3. Master and servant ⊙⇒401—Permitting injured employee to testify to injuries not alleged in pleadings held erroneous.**

In suit to set aside award of Industrial Accident Board in proceeding under the Workmen's Compensation Law (Rev. St. 1925, art. 8306), testimony by injured employee that he suffered certain injuries which were not alleged in pleadings *held* erroneous.

**4. Master and servant ⊙⇒418(5)—Failure to amend pleadings to show broken bones had united before trial held harmless, where compensation insurer had knowledge thereof (Workmen's Compensation Law).**

In suit to set aside award by Industrial Accident Board in proceeding under Workmen's Compensation Law (Rev. St. 1925, art. 8306), any error in failing to amend pleadings to show that bones of injured employee's leg had united since pleading was made and before trial *held* harmless under evidence showing that insurer joined in request for further treatment and surgical operations, and knew before trial that there had been union of bones.

**5. Trial ⊙⇒350(3)—Issue of injured employee's incapacity, independent of broken leg, should be submitted, where evidence showed other injuries.**

Where injured employee's testimony showed numerous other injuries besides broken leg, tending to incapacitate him, and which jury were entitled to take into consideration, issue as to whether he suffered partial incapacity independent of that suffered by broken leg should have been submitted.

**6. Trial ⊙⇒350(3)—Refusal of issue as to injured employee's partial incapacity held proper under evidence showing total incapacity to time of trial.**

Refusal of special issue as to how many weeks injured employee's partial incapacity would continue *held* not erroneous under evidence tending to show total incapacity to time of trial.

**7. Master and servant ⊙⇒401—Insurer is not liable for injuries to employee not pleaded nor proximate result of injuries set out.**

Insurer *held* not chargeable with any damages as result of injuries to employee which were not pleaded or were not natural and proximate result of injuries set out.

**8. Evidence ⊙⇒553(1)—Hypothetical question to physician, beginning, "Now, Dr., suppose this man had been injured as I said a while ago," held too indefinite.**

In suit to set aside award by Industrial Accident Board in proceeding under the Workmen's Compensation Law (Rev. St. 1925, art. 8306), hypothetical question to physician, beginning, "Now, Dr., suppose this man had been injured as I said a while ago," *held* objectionable as being too indefinite.

**9. Evidence ⊙⇒553(4)—Hypothetical question to expert should not assume proof of facts which have never been shown and are foreign to issue.**

Though hypothetical question to expert should be confined to facts shown according to examining counsel's theory of case, question should not assume proof of facts which have never been shown and are foreign to issue.

**10. Master and servant ⊙⇒385(20)—Lump sum decree held erroneous, in absence of permanent total incapacity (Workmen's Compensation Law).**

Where there was no permanent total incapacity, lump sum decree to injured employee, claiming compensation under Workmen's Compensation Law (Rev. St. 1925, art. 8306), was erroneous.

Error from District Court, Wichita County; W. W. Cook, Judge.

Suit by the Norwich Union Indemnity Company against Lute Davis and others to set aside an award of the Industrial Accident Board in a proceeding under the Workmen's Compensation Law. Judgment for defendant named, and plaintiff brings error. Reversed and remanded.

Thompson, Knight, Baker & Harris, and Adair Rembert, all of Dallas, for plaintiff in error.

Ragsdale, Humphrey & Brannan, of Burkburnett, for defendants in error.

HALL, C. J. This case arose under the Workmen's Compensation Law of Texas (Rev. St. 1925, art. 8306). The appellant company

appealed from the award of the Industrial Accident Board, and filed its petition in the district court of Wichita county to set aside the award. The defendants in the suit were Lute Davis, the injured party, and his attorneys, who had been allowed certain percentages of the award as their fees.

Davis set up in his answer that he had suffered personal injuries in an accident in the course of his employment by an employer who was a subscriber under the act, and alleged that the company had issued a policy to his employer pursuant to the provisions of the act. It is not denied that Davis was injured in the course of his employment while the policy was in effect.

The case was tried to a jury and submitted on special issues, and, based upon the answers of the jury to such issues, the court entered a judgment in favor of Davis for the sum of $6,330.50, with interest from date, less $620 theretofore paid him by the company. The judgment further provided that the attorneys of Davis take nothing.

In his cross-action Davis claimed damages, alleging that, on the 1st day of December, 1923, he—

"had sustained certain personal injuries in the manner and to the extent as hereinafter set out; that under the directions of his employer he was assisting in the loading of certain timbers, and, while so employed, a chain, upon which a team of his employer was pulling at the time, broke, permitting the double tree to fly back with great force and suddenness, the double tree striking him upon the right leg, breaking it below the knee, and breaking the bones in his leg in such manner as that no union of the bones thereof can be had, and as a result thereof he has lost the entire use of such leg, and as a result of its condition suffers pain continually therewith, totally incapacitating him, and defendants believe and allege that as a result thereof he will be, and is, totally and permanently incapacitated; that, since the date of said injury, his physique has been undermined and weakened; that the force of said blow threw him against a railroad box car standing near, injuring him internally, and dislocating the muscles and tendons in his shoulders and arms, and that he has, as a result, suffered continued ill health, and will continue to suffer ill health and disability, and that such injury has reduced his earning capacity to practically nothing, and that all of the injuries complained of are the direct and proximate result of the accident and injury aforesaid."

The first contention under several propositions which are grouped is that, because Davis' pleadings state particularly the injuries claimed by him to have been suffered, the court erred in admitting, over the company's objection, certain testimony tending to prove other and different injuries.

Dr. Martin, who testified for Davis, was permitted to state as follows:

"I think, in order to clarify this situation before the jury, so they may appreciate this situation, the various tendons of the foot which connect with the leg and are responsible for the foot action, though I was going to state the side action of the foot; that is, the lateral action in this portion (illustrating) was limited to about one-half inch. The man could move his foot laterally just one-half of what a normal foot can be moved; that is due primarily to the injury to his leg."

The witness then testified that he had examined the injured man, and proceeded as follows:

"Well, when I examined the leg, as I said, in an effort to determine—I examined the leg as I said in an effort to determine the degree, testing out the embarrassment, so to speak, that is, to determine the degree of disability of, testing out the embarrassment so to speak, testing out the embarrassment of the functioning, so to speak, that is, the degree of functioning of his foot, and to determine the length of his leg, and whether or not muscular action of the leg was embarrassed because of adhesions. * * * The flexation of the foot, that is, placing the foot in this position (illustrating), that is embarrassed likewise 50 per cent. By examination of the ligaments of the leg, I found it to be about three-quarters of an inch shorter than the other leg. Now that shortening was due either to loss of the bone tissue or a dissolution of the bone tissue. * * * There is also a limited action of the tendon in the forepart of the leg that has to do with raising the foot back up, the nerve of the foot. It is due, in my opinion, to the existence of adhesions."

It was shown during the trial that two different surgeons employed by Davis had set the bones of his leg, but that the bones had not united, and that, upon application of both parties, the court had ordered an additional operation, and under the orders of the court Davis had again been operated upon by a Dallas surgeon in a hospital in that city, where he was confined for about seven months with the injured leg in a plaster cast; that the Dallas surgeon was able, by his operations, to effect a union of the broken bones, but that, owing to the long treatment incident to getting this union, and the consequent inactivity of Davis, and his inability to use his leg while in the plaster cast, there was some degree of stiffness in his ankle, and this stiffness was the trouble which Dr. Martin's testimony, over the objection of the company, disclosed.

[1] It was not shown either by the pleadings or the evidence that placing the leg in the plaster cast was improper, or that the treatment was not carefully and successfully carried out. Such being the case, we think the testimony in so far as relating to the stiffness in the ankle joint was admissible.

In the case of the City of Dallas v. McCullough (Tex. Civ. App.) 95 S. W. 1121 (writ of error denied), the attending physician testified with reference to his treatment of a fracture of his patient's arm that he had placed the arm in a plaster cast where it remained for about five weeks, and said:

"Then I took the cast off, and told him to massage that arm and hand clear up to his elbow. On account of the time the cast was on it, it immobilized those muscles, and kept them perfectly quiet so long that, of course, they naturally decreased in size very much from disuse."

The defendant objected to the last part of this answer upon the ground that it described an injury not mentioned in the petition, and was incompetent, irrelevant, and immaterial. Judge Bookhout says:

"The evidence was not subject to these objections. The immobilization of plaintiff's arm was the result of a proper treatment of the injury to plaintiff, and was made necessary by his injuries. It is not contended that Dr. Tipton failed to apply the proper treatment to plaintiff's injuries. If the proper treatment was applied, and injury resulted from such treatment, then the same was the proximate result of plaintiff's fall from his float, and he was entitled to recover for the same. Ry. Co. v. Hagan [42 Tex. Civ. App. 133] 93 S. W. 1014."

It was proven, without controversy, that the stiffness in Davis' ankle was due mainly to the fact that his leg was held motionless in the plaster cast for so long. We think that testimony was admissible. Missouri-Pacific Ry. Co. v. Mitchell, 72 Tex. 171, 10 S. W. 411; C. L. Smith Co. v. Riggs, 111 Tex. 173, 230 S. W. 139; M. K. & T. Co. v. Edling, 18 Tex. Civ. App. 171, 45 S. W. 406.

[2, 3] For the same reason we think the testimony to the effect that the injured leg was shortened as the result of the necessary operations was also admissible, but we think the court erred in permitting Davis to testify, over the company's objections, that, as a result of the accident, he suffered injuries to his ear and the side of his face, and that his leg became infected after the last operation. There was no pleading under which evidence of these injuries was admissible. The allegations that the muscles and tendons in his shoulders and arms were dislocated did not authorize the admission of testimony showing injury to what Davis called his "tenderloin." As we understand the anatomy of a beef, the tenderloin is located in the hind quarters.

[4] It is true that Davis pleaded that there had been no union of the fractured bones in his leg, and it is further true that the evidence all showed that the bones had united as a result of the surgeon's efforts who treated him last in a Dallas hospital. His pleading was filed long before this last treatment and before the bones had united. Good practice required that he amend his pleadings before going to trial and change the pleading to accord with the facts. However, since the evidence shows that the company joined in the request for further treatment and surgical operations, and knew before the trial that there had been a union of the bones, we think that error, if any, is harmless.

It is contended, further, that the verdict and judgment are not supported by the evidence as to several of the findings. The jury found: (1) That at the time of the trial Davis was totally incapacitated for work as a result of the injuries; (2) that he would be totally incapacitated in the future (3) for 370 weeks; (4) that, after the total incapacity, Davis would suffer partial incapacity (5) to the extent of 25 per cent.; and (6) that the period of permanent partial incapacity would extend for 1,092 weeks. There is a further finding to the effect that Davis is entitled to a lump sum settlement. There is some evidence tending to sustain the finding that he was totally incapacitated from the date of the injury to the time of the trial. In view of the fact that the judgment must be reversed, it is not proper to discuss the sufficiency of the evidence to sustain the findings of the jury with reference to the duration of either the total or partial incapacity. The fact that the operation, necessarily performed to effect a union of the bones of his leg, required the removal of part of the bone, resulting in a shortening of his leg, shows a permanent condition, but one surgeon, testifying as an expert, stated that such condition would not interfere seriously with his labor as a teamster. These, of course, are matters which we should not discuss in view of another trial.

The remaining contentions relate to the alleged error of the court in not submitting certain special issues requested by the company. The first special issue requested is as follows:

"Is Lute Davis at this time suffering a total incapacity for work as a result of the injuries sustained December 1, 1923?"

This issue was submitted by the court and answered by the jury in the affirmative.

In connection with the special issues submitted by the court, appellant requested this special issue, which was refused:

"If you answer special issue No. 6 in the negative, you need not answer this interrogatory, but, if you answer in the affirmative, then answer how many weeks would said total incapacity have existed."

We think this issue was sufficiently answered by the finding of the jury in response to the court's special issue No. 6.

The company requested the following special issue, which was refused:

"Did Davis suffer any partial incapacity to labor as a result of the accident of December 1, 1923, independent of that resulting from his broken leg? Answer 'Yes' or 'No.'"

—and the following issue was also requested and refused:

"If you have answered special issue No. 8 in the negative, you need not answer this is-

sue, but, if you have answered same in the affirmative, then answer how many weeks would such partial incapacity continue."

[5, 6] In view of the fact that the testimony of Davis showed numerous other injuries besides the broken leg, which tended to incapacitate him, and which the jury were entitled, under the pleadings, to take into consideration, we think the first of the above-quoted issues should have been submitted, but, in view of the fact that the jury found that he had been totally incapacitated for work from the date of the injury to the time of the trial, the refusal of the second special issue was not error, since there was evidence tending to show his total incapacity to the time of the trial.

The next requested issue, which the court refused, is:

"If, in answer to special issue No. 2, you have found that Davis will suffer a total incapacity to work in the future as a result of the injuries sustained, is such finding based upon the injury that existed because of the broken leg?"

[7] In view of the admission of improper testimony as hereinbefore discussed, we think this issue should have been submitted because the company was not chargeable with any damages as the result of injuries which had not been pleaded or were not the natural and proximate result of the injuries set out.

The court did not err in refusing the other special issues requested. Texas Employers' Ins. Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84.

[8, 9] We think the hypothetical question propounded to Dr. Martin was objectionable. The question begins, "Now, Dr., suppose this man had been injured as I said a while ago." This was too indefinite. Among other things which counsel had said (a while ago) was the claim that Davis' injury had caused him suffering in his spine and on the left side of his back, when there was no direct testimony that his spine had ever been injured. The question further assumes that Davis had "laid in a hospital as a result of that injury at intervals for a continuous period of nearly two years." While it is the general rule that a hypothetical question to an expert should be confined to the facts shown according to the examining counsel's theory of the case, the question should not assume the proof of facts which have never been shown and are foreign to the issues. It is not necessary that each hypothetical question should embrace all the facts under the conflicting theories of the case, as the opposite party has the right, on cross-examination of the expert witness, to ask a question which embraces the facts that the evidence, according to his theory, sustains. This, however, is an error which may not occur upon another trial.

[10] The evidence did not show, and the jury did not find, that there was permanent total incapacity, and, for that reason, the appellees concede that there was error in decreeing a lump sum judgment. They request this court to reform the judgment, but from what we have hereinbefore said it will be seen that the record is not in such condition as to enable us to do so. During the period while Davis' incapacity was total his compensation under article 8306, section 10, could not be computed for more than 401 weeks, and under section 11 of the act his compensation for both total and partial disability could not exceed 401 weeks. It is expressly held in the Moreno Case, supra, that allowances for compensation under section 10 for total disability resulting from injuries not specifically named in section 12, which provides for compensation for specific injuries, does not preclude an allowance under the latter section for partial incapacity due to partial loss of a member, because the latter section contains no provision that recovery thereunder should be "in lieu of" any other recovery.

For the errors discussed, the judgment is reversed and the cause is remanded.