## UNITED STATES FIDELITY & GUARANTY CO. v. NETTLES. (No. 829.)

Court of Civil Appeals of Texas. Waco.
Oct. 3, 1929.

Rehearing Denied Oct. 31, 1929.

32

Spell, Naman & Penland, of Waco, for appellant.

Bryan & Maxwell, of Waco, for appellee.

STANFORD, J. This is a workmen's compensation case, arising out of an injury received by appellee while engaged in work as an employee of the Goldstein-Migel Company at Waco, Texas, on May 25, 1927. The claim was duly presented to the Industrial Accident Board, and an award made by said board, from which award appellant duly appealed to the district court of McLennan county, where a jury trial was had. The jury, in answer to special issues, found, in substance: That appellee did sustain personal injuries

on May 25, 1927, while engaged in the course of her employment for the Goldstein-Migel Company, and that said injuries totally incapacitated appellee to work, and that such total incapacity was permanent. The jury found further that this is a special case in which manifest hardship and injustice will result to appellee if her compensation is not paid in a lump sum, and that such total permanent incapacity for work resulted directly and proximately from the injuries sustained by her on May 25, 1927, and not from infection or disease not caused by or resulting from said injuries. The court thereupon entered judgment for appellee for $4,602.22, allowing a discount of 6 per cent. on the future payments in arriving at the amount to be paid in a lump sum. From this judgment appellant has duly appealed.

■ Under its first proposition, appellant contends there was no evidence that appellee was totally and permanently incapacitated, and therefore the verdict of the jury awarding compensation for total and permanent incapacity was without evidence to support same. Under its second proposition, appellant contends, in effect, that the finding of the jury that appellee was totally and permanently incapacitated was against the overwhelming weight and preponderance of the evidence. We will consider these propositions together. The record shows the injuries to appellee occurred May 25, 1927. The case was tried, beginning January 29, 1929. After describing how a reel of clothing fell on and against her, bending her, as she said, backward and almost double, and the very great strain she endured while in said position until two ladies lifted the reel of clothing off of her, appellee testified, in substance, that she did not sleep any at all the night after the injury; that the next day she went back and for a few days tried to work, but found she could not work; that the last of August she tried to work, but that she could work but a little at a time and then suffered such pain that she just turned blind; that she had suffered intense pain ever since she was hurt; that for the first weeks the pain was practically all over her back, but at the time of the trial it was localized in her right hip; that the muscles on the right side of the spine draw so tight as to pull her over, but the intense pain is through the right hip, right through the sacroiliac joint; that when she sits down she has to use an air pillow, and then cannot sit for any length of time even on an air pillow; that she cannot stand very well without her hand on something; that her right limb gives way, in fact, she had fallen several times; that she was never free from pain, but when she was in motion it was not so severe as when sitting or lying; that she had not been able to sleep on her right side nor back; that, since the time she was hurt, if she tried to do housework, she had to go to bed; that prior to the injury she worked in a dry goods store as a saleslady for nine years, and at the same time did all of her housework, such as cooking, washing dishes, cleaning house, in fact, every kind of housework a housewife is required to do, but since the injury she is not able to do anything in the way of housework or as a saleslady. The above is only a part of the evidence of appellee of her crippled condition at the time of the trial, nearly two years after her injury. X-ray pictures were taken, which some of the physicians testified showed a separation at the sacroiliac joint.

Dr. Collins testified: "I think I reported that I found a widening at that joint. I did find a widening there. Her joint was a little bit wider at that point than normal as compared to normal of the average person, that is the only statement I could make. * * * That the accident suffered by Mrs. Nettles could have produced the injury claimed."

Dr. Colgin, among other things, testified: "That a sacroiliac strain is a thing that is very painful and would produce almost constant pain."

Dr. Wood, in part, testified: "My testimony is that under the facts as you have stated them, Mrs. Nettles sustained a wrenched back instead of an injury to the sacroiliac, or a sacroiliac strain. Yes, when I refer to a wrenched back I mean a tilting and twisting of bones, its tendons and muscles."

Dr. Kirby testified, in part, as follows: "Now, outside of what the picture shows, I would not say that Mrs. Nettles did not sustain an injury; she had an injury, and that injury is in the region of the sacroiliac region. * * * In cases of that kind, where a person suffers an injury to the sacroiliac region and has a stretching or tearing of the tendons and muscles, those things usually stay with that patient, if it is severe enough. Yes, sir, if she had a torn ligament or stretching between the two bones sufficient to tear, she probably would always have an injury."

Dr. Bidelspach testified, in part: "I thought Mrs. Nettles had an arthritis or sacroiliac strain."

Dr. Bailey testified, in part, that he treated appellee and gave it as his opinion that she was permanently disabled. We have not set out all the evidence favorable to the appellee upon the issues here involved, but sufficient, we think, not only to show the issue of fact, as to whether appellee was totally and permanently disabled, was made by the evidence, but we think the finding of the jury that she was so disabled is sufficiently supported by the evidence, and we cannot say said finding is against the overwhelming weight and preponderance of the evidence. Wininger v. Railway Co., 105 Tex. 56, 143 S. W. 1150; Brown v. City Service Co. (Tex. Com. App.) 245 S. W. 658; Southern Surety Co. v. Lacoste (Tex. Civ. App.) 7 S.W.(2d) 197, writ refused; Standard Accident Ins. Co. v. Wil-

liams (Tex. Civ. App.) 4 S.W.(2d) 1023, affirmed' (Tex. Com. App.) 14 S.W.(2d) 1015. We overrule the above propositions.

Under its third proposition, appellant contends the court erred in rendering judgment against it for a lump sum, for the reason that the statute does not provide a rate of discount for future maturing installments, and there is no evidence from which the court could determine the reasonable and proper discount, nor the present value of said installments. The record shows, and the judgment of the court recites, that appellee was entitled to recover for 400 weeks at $12.978 per week, that, at the time of the trial, 86 of said installments were past due, and that 314 of said installments were to mature in the future, one each week. In arriving at the amount of the lump sum judgment, the court allowed 6 per cent. interest on the past-due installments, respectively, from the date each became due to date of the judgment, aggregating $1,168.80, and discounted the installments maturing in the future at the rate of 6 per cent., aggregating $3,433.42. There are several answers, we think, to this contention. It is true, section 15 under article 8306 of our statutes (Rev. St. 1925) does not prescribe the rate of discount to be applied to future maturing installments; but it does provide: "The board may compel the association * * * to redeem their liability by payment of a lump sum *as may be determined by the Board.*" (Italics ours)—and of course on appeal the district court has the same powers as the board. We think the Legislature, in enacting this statute, presumed the board and the trial court would be able to do equity and justice in discounting the future maturing installments without the rate or kind of discount being specified in the statute, that same is a matter in a measure left to the discretion of the trial court, and that such discretion should not be interfered with by the appellate court unless it is made to appear that such discretion has been abused, resulting in an injustice to appellant. We think the concluding clause of the above section so indicates. Lumbermen's Reciprocal Ass'n v. Behnken et al. (Tex. Civ. App.) 226 S. W. 154. It is true a writ of error was granted in this case, but *not on the question* here discussed. 246 S. W. 72. We think also the 6 per cent. adopted by the court as the basis of the discount allowed was correct, in that sections 15 and 15a of article 8306 deal with the same general subject of lump sum settlements, and should be read and considered together, and, as section 15a expressly provides for discount for present payments at the legal rate of interest, said rate should be held to apply under the provisions of said section 15. Texas Employers' Ins. Ass'n v. Herzing (Tex. Civ. App.) 9 S.W.(2d) 457. In the cited case it is not clear what rate of discount the trial court applied, but it was less than 6 per cent., and resulted in a judgment for $2,797. The insurance company appealed, contending it was entitled to discount at the rate of 6 per cent. This contention was sustained by the Court of Civil Appeals, cited above, the judgment reformed by applying 6 per cent. discount, resulting in a judgment of $2,500.20, which judgment as reformed was affirmed by said Court of Civil Appeals. Writs of error were granted both parties—the insurer upon the ground of error in awarding a lump sum, and the assured upon alleged error in allowing 6 per cent. discount resulting in the reduction of her judgment, as above stated. The Commission of Appeals, through Justice Nichols, overruled the insurer's contention and sustained the contention of the insured, and reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court. Appellant cites and relies upon this case as authority for its contention that the *instant case should be reversed on the ground* that the trial court applied a 6 per cent. rate of discount without hearing evidence of what was a reasonable rate. This opinion might properly be taken as authority that 6 per cent. is too great a rate of discount, but this would certainly furnish appellant no grounds for complaint. There are several opinions by our Courts of Civil Appeals, in which it is said the rate of discount should be fixed upon evidence, but none of the cases wherein said opinions were rendered were reversed for failure of the trial court to so hear evidence, except the case of Maryland Casualty Co. v. Marshall (Tex. Civ. App.) 14 S.W.(2d) 337, in which case a writ of error was granted, and, as we understand, a settlement made.

There is another reason why we think the trial court was correct in adopting the 6 per cent. rate of discount. Article 5069 of our statutes defines "interest" as follows: " 'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." The term "discount" may mean the compensation for the use of money, or it may mean the method of arriving at such compensation for the use of money. When used in the former sense, it is synonymous with the term "interest." In this sense, discount, and especially bank discount, is simply interest paid in advance or deducted from the principal sum loaned. One engaged in discounting paper is engaged in loaning money, and, if the rate of discount is greater than the rate of interest allowed by law, he is guilty of usury. Article 5071, Revised Civil Statutes; Morris v. First Nat. Bank (Tex. Civ. App.) 192 S. W. 1074; Anderson et al. v. Building & Loan Ass'n (Tex. Sup.) 16 S. W. 298. See, "Discount," 18 C. J. p. 1050, and cases cited. Our statutes further provide that "legal interest" is that interest which is allowed by law when the parties to a contract have not agreed upon any particular rate of interest. Article 5069.

Article 5070 provides: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent. per annum shall be allowed," etc. The contract of insurance made the basis of this suit provided for the payment of compensation in weekly installments. There was no provision for any rate of interest on past-due installments, nor for the deduction of interest or discount at any rate, in case said installments, or a part of them, were required to be paid before maturity. Under the facts above stated, the provisions of our statutes above as to the rate of interest or discount became a part of said contract as effectually as if written therein. There is no complaint of the action of the trial court in reading into the contract sued upon said statutory provisions, resulting in appellant being charged with 6 per cent. on the past-due installments. This is admittedly correct. We think the court was equally correct in discounting the future maturing installments at the same rate. It was certainly equitable and just for the rights of both parties to be determined by the same standard of measurement.

■ As the present value of a given sum of money due in the future is determined by the prevailing rate of discount, and the rate of discount is based upon the rate of interest, if the court is required to hear evidence of what is a reasonable rate of discount, then the trial court would have to go into the whole field of a reasonable rate of interest; and, as the rate of interest is different in different parts of the state, and varies according to the size of the loan, the personal responsibility of the borrower, the length of time of such loan, the character of security offered, etc., a very complicated and difficult question would be presented to the court or jury for decision, which would result in different rates in different parts of the state, and even in cases tried in the same court. Such proceeding would tend to complicate the trial, increase court costs, the probability of a reversal, and delay the final disposition of the case. Such is not the policy of the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309) but it should be liberally construed with a view of speedily reaching the ends of justice, without unnecessary technicalities, confusion, and lengthy lawsuits. We overrule appellant's contention.

■ Under its fourth proposition, appellant contends that that portion of the article which provides for a lump sum settlement in case of manifest hardship and injustice to the claimant is unconstitutional, because it is class legislation which distinguishes without a reasonable basis between classes of persons and affords one class of persons greater rights and remedies than another class of persons, and is therefore contrary to the provisions of the Constitution of the United States and of the state of Texas. A compensation policy written under the provisions of our Workmen's Compensation Law is a contract involving three parties, the insurer, the employer, and the employee. A suit by an injured employee on such policy against the insurer to recover compensation is a suit upon a contract. Southern Casualty Co. v. Morgan (Tex. Com. App.) 12 S.W.(2d) 200. By the provisions of said contract, appellant agreed, in case of injuries to the employee, to pay on certain contingencies certain compensation in weekly installments, and provided further, in effect, to pay in a lump sum, where in the judgment of the board manifest hardship and injustice would otherwise result. Of course this provision became a part of the contract by virtue of the provisions of said act, but appellant, by voluntarily executing said contract under the provisions of said act, thereby fully agreed and assented thereto. So we think the question here involved is one of contract, rather than the constitutionality of a provision of the statute. However, if appellant were in a position to attack said provision of the statute, we think there is no merit in its contention, in that the basis of distinction between cases where a lump sum is allowed and where it is not is a reasonable basis of distinction. While the exact question here involved was not discussed, the general scheme of our Workmen's Compensation Law was discussed and held constitutional in the following cases: Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556; Middleton v. Texas Power & Light Co., 249 U. S. 152, 39 S. Ct. 227, 63 L. Ed. 527; Southern Casualty Co. v. Morgan (Tex. Com. App.) 12 S.W.(2d) 200.

■■ Under its eighth proposition, appellant contends there was no evidence that manifest hardship and injustice would result to appellee in case a lump sum settlement was not allowed her, and the finding of the jury to the contrary is not supported by any evidence. The record shows that appellee is a widow, has two sons and an orphan child dependent upon her for support and education; that she owes $5,000 on her home; that her only means of support was her wages and what she could make from renting rooms; that since her injury she has not been able to work either for wages or in keeping roomers. The jury found that this is a case in which manifest hardship and injustice would result if a lump sum settlement was not allowed. We think this finding of the jury is amply supported by the evidence, and hence this court has no right to interfere with such finding. Consolidated Underwriters v. Saxon (Tex. Com. App.) 265 S. W. 143; Texas Employers v. Bondreaux (Tex. Civ. App.) 238 S. W. 697; Norwich Union v. Wilson (Tex. Civ. App.) 17 S.W.(2d) 68–77.

■ Under its fifth proposition, appellant contends the court erred in admitting in evidence the testimony of the witness Nichols, to the effect that he heard frequently moans and groans coming from appellee's room. The

record shows that the witness occupied a room opposite and just across a hall from the one. occupied by appellee, and that the witness frequently both day and night heard moans and groans coming from appellee's room. The only objection to this evidence was that it was hearsay and was not res gestæ. This evidence was not hearsay, and, while it was not res gestæ of the injury to appellee, it was, in a sense, res gestæ of present suffering by appellee. These expressions fall within the rule that involuntary expressions of present pain or suffering, which exclude the idea of premeditation, are admissible in this character of cases. Railway Co. v. Love (Tex. Civ. App.) 169 S. W. 922, writ refused; Texas Employers Ass'n v. Davidson (Tex. Civ. App.) 288 S. W. 471; Wheeler v. Tyler Southeastern Ry. Co., 91 Tex. 356, 43 S. W. 876; Wigmore on, Evidence (2d Ed.) vol. 3, § 1718.

Under its sixth proposition, appellant contends the court erred in sustaining objections to its hypothetical question to Dr. Kirby and in refusing to permit the witness to answer same, upon the objection by appellee that the question assumed facts which were not in evidence. We have examined the record, and think the question was subject to the objection made and that the trial court was correct in sustaining same. Norwich Union Indemnity Co. v. Davis (Tex. Civ. App.) 293 S. W. 932; Texas Employers Ass'n v. Fitzgerald (Tex. Com. App.) 296 S. W. 509.

Under its seventh proposition, appellant contends the court erred in overruling its two motions, to wit: First, to require appellee to be examined by three physicians to be named by the court; second, that the court require appellee to be examined by Dr. K. H. Aynesworth. The qualification by the court of appellant's bill of exception to the action of the court in overruling said motions, shows that appellant made these motions when the case was practically closed; that appellee had freely submitted herself, upon request of appellant, to quite a number of physicians for examination, and at no time had she refused any such requests; that five of these physicians who examined her testified in the case; that three sets of X-ray pictures were before the physicians as they were being examined; and that one set was introduced in evidence. The question here involved was a matter addressed to the discretion of the trial court, and we do not think the court abused such discretion in' overruling said motions. Texas Employers' Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112, writ refused; Texas Employers' Ass'n v. Knouff (Tex. Civ. App.) 271 S. W. 633, writ refused; Williams v. Employers' Liability Ass'n (Tex. Civ. App.) 293 S. W. 210.

We have not discussed, but have considered, all of appellant's propositions, and, finding no reversible error, overrule same, and affirm the judgment of the trial court.