DALLAS RY. & TERMINAL CO. et al. v. PRICE et ux.

No. 11775.

Court of Civil Appeals of Texas. Dallas.

April 11, 1936.

Rehearing Denied May 30, 1936.

Worsham, Rollins, Burford, Ryburn &
Hincks, Allen Charlton and Leachman &
Gardere, all of Dallas, for appellants.

W. F. Bane, E. D. Hurt, Mack L. Vick-
rey, and Carden, Starling, Carden &
Hemphill, all of Dallas, for appellees.

LOONEY, Justice.

Mr. and Mrs. W. S. Price sued Dallas
Railway & Terminal Company, Yellow
Cab Company, and the Anderson Furniture
Company (corporations) to recover dam-
ages for injuries sustained by Mrs. Price
in a collision between a taxicab, belonging
to the cab company, in which she was a
passenger, and a street car owned and
operated by the railway company. Plain-
tiffs allege that the collision resulted from
negligence by the motorman operating the
street car; negligence by the driver of the
taxicab; the liability of the furniture
company being based on the doctrine of
respondeat superior, in that on the occa-

sion in question, the cab company, at the instance of the furniture company, was carrying Mrs. Price from its store to her home in the city of Dallas.

The defendants answered by general denials; the railway and cab companies by special pleas, alleging that, in certain respects, Mrs. Price was guilty of contributory negligence, that the collision was an unavoidable accident, and each alleged that the sole proximate cause of the collision was the negligence of the other, the railway company praying that, if compelled to pay plaintiffs damages, it have contribution from its co-defendants.

It appears that, just prior to the accident, the taxicab in which Mrs. Price and her daughter were passengers was traveling west on Elm street, and on reaching the intersection with St. Paul street, a red light being displayed, the evidence is conflicting as to whether the cab was driven into the intersection or brought to a full stop. Mrs. Price and daughter both testified that the cab stopped for the red light; the cab driver testified that the car slowed down and either stopped or practically stopped, but the motorman testified that the cab approached and was driven into and through the intersection at a speed of 25 miles per hour. At this time, the street car, traveling east on Elm street, stopped to accommodate passengers, and in obedience to a red light, and on a green light appearing, entered the intersection, and was gradually turning to the left on a curve towards the north on St. Paul, and while thus turning, the taxicab going west through the intersection, to avoid a collision, swerved to the right and around the north end of the street car, but as the pavement was wet and slick the cab skidded and collided with the end of the street car, causing the injuries to Mrs. Price of which complaint is made.

The court instructed a verdict for the furniture company, and accordingly judgment was rendered in its favor. In answer to appropriate issues, the jury found that the railway company was guilty of actionable negligence, in the following respects: That the operator failed to stop the street car so as to reasonably enable the taxicab (in which Mrs. Price was a passenger) to pass over the car track in safety and without a collision; and that the operator failed to exercise due care with reference to keeping a lookout for the taxicab while it was approaching. The jury found the cab company guilty of actionable negligence on several counts, as follows: That its driver failed to keep a proper lookout for the street car; failed to operate the cab at a proper speed; failed to stop the cab before the collision; failed to stop or slow down as he approached the intersection; and failed to make a timely application of brakes. The jury acquitted Mrs. Price of contributory negligence; found that the collision was not an unavoidable accident as to either the railway company or the cab company, and that the negligence of neither was the sole proximate cause. The jury having assessed plaintiffs' damages at $3,000, a joint and several judgment for that amount was rendered against these defendants in favor of the plaintiffs, and the prayer of the railway company for contribution against its codefendants was granted as to the cab company, but denied as to the furniture company, from which both the railway and cab companies appealed.

The findings of the jury are sustained by evidence, hence are adopted as our conclusion on the respective issues, and the judgment rendered, being thus authorized, should be affirmed, unless shown to be erroneous for the reasons which will now be discussed.

Insisting that it was entitled to contribution from its codefendants, the railway company assigns error on the action of the court in instructing a verdict and rendering judgment in favor of the furniture company; this contention is based on the theory that the evidence raised an issue as to its liability for the negligence of the driver of the taxicab under the doctrine of respondeat superior.

█ The relevant facts are these: Mrs. Price, desirous of purchasing some furniture, had been quoted prices by the Anderson Furniture Company and other furniture dealers, and, in this situation, was requested by a representative of the Anderson Company to return to its store, promising to quote cheaper prices on the furniture. To this she agreed, but her car being out of order, the company volunteered to send a cab for her, which was done, and after purchasing the furniture, the company called a cab for her return trip, and furnished her the necessary money to pay cab fare home. Thereupon she entered the cab at the store of the furniture company, and was being driven home when the accident occurred. The cab company

at the time was engaged as a common carrier, in the city of Dallas, transporting passengers for hire with which the furniture company had no connection; in short, the facts show indisputably that the cab company's relation to the transaction was that of independent contractor. No contention is made that the furniture company was negligent in the matter of selecting the means of transportation, the contention being simply that, under the doctrine of respondent superior, it was liable for the negligence of the cab driver, and by this route the railway company arrives at the conclusion that it was entitled to contribution from the furniture company.

■ It is only by virtue of article 2212, R.S.1925, that contribution between joint tort-feasors is authorized. This statute provides that: "Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort * * * shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment," etc. Thus, it is seen that the statutory right to contribution does not arise in limine, but only on payment by one against whom, with one or more defendants, a judgment is rendered. Plaintiffs do not complain of the instructed verdict and judgment in favor of the furniture company, and while we do not deem it necessary to rule upon the question, yet we are of opinion that the railway company is in no position to question the correctness of the judgment in favor of the furniture company. However that may be, we think the undisputed facts show that the furniture company was not liable under the doctrine of respondeat superior for the negligence of the cab driver; hence, in no event should it be called upon for contribution by the railway company.

■ As defined in several recent cases, an "independent contractor" is one who undertakes to perform a service with his own instrumentalities and according to his own methods without being subject to the control of the employer, except as to the result sought to be obtained. See Baldridge v. Klein (Tex.Civ.App.) 56 S.W. (2d) 897, 898; Loan Star Gas Co. v. Kelly (Tex.Com.App.) 46 S.W.(2d) 656; Dave Lehr, Inc., v. Brown et al. (Tex.Civ.

App.) 58 S.W.(2d) 886. As applied to employments similar to the one under consideration, the Supreme Court of Colorado, in Frerker v. Nicholson, 41 Colo. 12, 92 P. 224, 13 L.R.A.(N.S.) 1122, 14 Ann. Cas. 730, held that a livery stable keeper, and not one who hires a carriage and horses and driver from him, is liable for injuries to a third person by negligence of the driver, when the hirer (as in the instant case) exercised no control over the driver other than to tell him, in a general way, where to go (see numerous authorities cited in the opinion and in the notes). This assignment is overruled.

■ The railway company pleaded specially that the driver of the cab failed to slow down to not more than three miles per hour in violation of a city ordinance requiring any one driving motor vehicles to reduce speed to not more than three miles per hour before entering an intersection, and that such violation was the sole proximate cause of the collision; and further that Mrs. Price was guilty of contributory negligence, in that, knowing the driver was not slowing down before entering the intersection, she failed to warn him to do so. This plea having been striken out on special exception urged by plaintiffs, to the effect that the ordinance in question was void because in conflict with the state speed regulation, the railway company assigns error on this action of the court.

We recognize the rule (asserted by plaintiffs) that city charters and ordinances in conflict with either the Constitution of the state, or a general statute, are void to the extent of the conflict (McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202, 206); but, as hereinafter shown, we fail to find any such conflict in the instant case.

The provision of the statute on the subject is section 9, chapter 282, Acts of the Regular Session of the 42d Legislature (Vernon's Ann.P.C. art. 827a, § 8), making it unlawful for any person to operate or drive any motor or other vehicle "within the corporate limits of an incorporated city or town or within or through any town or village not incorporated, at a greater rate of speed than twenty (20) miles per hour"; also making it unlawful to operate a commercial motor vehicle at a rate of speed in excess of eighteen miles per hour. The railway company contends that the ordinance in question is a

traffic and not a speed regulation, hence is not in conflict with the statute. Section 12 of the act referred to also provides that: "Nothing contained in this act shall be construed so as to limit, restrict or impair the rights, powers and duties of the governing bodies of cities and towns in this State to continue the exercise of control over and regulations in respect to streets, alleys and other public places located within the corporate limits of cities and towns, nor to limit or restrict the right of cities and towns to regulate and control traffic upon the streets, alleys and other public places in cities and towns under any law of this State; provided, no city or town shall pass any ordinance or make any regulation establishing any limit or requirement less than is provided for by the terms of this act." In several adjudicated cases a distinction was made between traffic and speed regulations, holding that ordinances requiring motor vehicles to slow down, or to stop entirely under certain circumstances, were not in conflict with the statute limiting the speed of vehicles in cities and towns. See Lamar & Smith v. Stroud (Tex.Civ.App.) 5 S.W.(2d) 824; Miks v. Leath (Tex.Civ.App.) 26 S.W.(2d) 726, 729.

Plaintiffs insist, however, that, although cities and towns are authorized to regulate and control traffic within their boundaries, yet the concluding language of section 12, supra, to wit, "provided, no city or town shall pass any ordinance or make any regulation establishing any limit or requirement less than is provided for by the terms of this act," limits the power of cities and towns and forbids the establishment of a less rate of speed for vehicles than the rate prescribed by statute.

We cannot accept this view; each city has its own peculiar traffic problems, and each zone of a city may present a different one, such as at congested business centers, at schools where children assemble and romp each school day, and at churches, especially on the Sabbath when people of all ages assemble—the proper solution of which would doubtless demand that motor vehicles be operated at a less rate of speed than 20 miles per hour. The 20 miles per hour provision of the statute, in our opinion, was intended simply as a maximum rate, in excess of which the city could not authorize vehicles to be operated, leaving governing bodies of cities and towns free, in the proper regulation of local traffic, to prescribe, within the named maximum, other speed limitations and requirements. If the construction of the statute contended for by plaintiffs be correct, that is, if a city or town is without power to prescribe a less rate of speed than 20 miles per hour, drivers of vehicles could not be required by ordinance to slow down where traffic is congested, or people assemble in unusual numbers, and the vehicular traffic set-up, known as the signal and light system, in operation in all the larger incorporated cities and towns of the state, would be prohibited. We cannot adopt as correct a construction of the statute leading to such results.

So, we conclude that the ordinance under consideration is not in conflict with the statute, that it is a traffic and not a speed regulation, and that cities and towns, in the proper regulation and control of vehicular traffic within their boundaries, may prescribe a less rate of speed than that prescribed by the statute. This leads us to the further conclusion that the special exception was based on an untenable ground; however that may be, it is our opinion, nevertheless, that the action of the court in striking the plea was correct, for the reason which will now be stated. The pleading of the parties reveals that the traffic at the street intersection in question was controlled by the signal and light system of the city, requiring vehicles to be brought to a full stop on the display of a red light, and not to go forward into the intersection until a green light appears. The language of the ordinance invoked by the railway company as basis for its special exception was taken from article 1329 of the City Ordinances regulating vehicular traffic, providing that each motor vehicle shall have a signaling device; that the operator of same shall sound an alarm when approaching any street where persons or vehicles are in the act of crossing or standing near, or any person is alighting from or boarding a street car; the article concludes with the language pleaded by the railway company, as follows: "The operator of a motor vehicle shall slacken the speed of such motor car or motorcycle or motor vehicle to not more than three miles per hour when turning a corner or approaching a street crossing." We think it obvious that this ordinance was designed to regulate traffic at street intersections, other than those controlled

by the signal and light system, as was the intersection where the collision occurred; hence the ordinance pleaded not being applicable to the situation, the court did not err in striking out the plea.

■ However, if the action of the court in sustaining the special exception to the plea based upon the city ordinance be considered erroneous, the same, in our opinion, was cured and became harmless for reasons which will now be stated. In support of its contention that the negligence of the cab driver was the sole proximate cause of the collision, in addition to its stricken plea based upon the ordinance, the railway company alleged that the cab driver was guilty of negligence in the following respects: That he failed to slow the cab down or stop until the street car had cleared Elm street; that he approached the intersection at a speed of 40 miles per hour and failing to slow down tried to drive to the right around the end of the street car; that he failed to slow down as he' approached the intersection, so as to enable him to stop the cab, if necessary; that in approaching the intersection he operated the cab at a speed of more than 20 miles per hour in violation of a state statute; that he operated the cab at a greater rate of speed than a person of ordinary prudence would have done under the circumstances; that in failing to slow the cab down far enough back from the intersection so as to be able to control the cab within the intersection; and that in violation of city ordinances he failed to slow down as he approached the intersection; failed to have the cab under control on entering the intersection, and in operating the same as he approached the intersection at a greater rate of speed than 15 miles per hour.

In support of these allegations of negligence, evidence was introduced, and the court submitted pertinent issues thereon that were considered and answered by the jury, as follows: That the cab driver failed to exercise a high degree of care in not stopping the cab before the collision so as to enable the street car to pass; that he did not fail to exercise a high degree of care in not speeding up the cab so as to clear the path of the street car before reaching the point of collision; that in approaching the intersection the cab was not traveling at a greater rate of speed than 15 miles per hour; that he failed to stop or slow the cab down 'as

it approached the intersection, so as to enable him to stop the same, if necessary, in time to avoid the collision; that he did not approach the place of the collision at a rate of speed in excess of 20 miles per hour; that just prior to the collision he was operating the cab at a greater rate of speed than a person of ordinary prudence would have done under the same or similar circumstances; that he did not fail to exercise ordinary care with respect to having his cab under control as he entered the intersection; and that his negligence was not the sole proximate cause of the collision.

In view of this situation, we are of opinion that, notwithstanding the ruling of the court sustaining special exceptions and striking out the plea based upon the three-mile .slow-down ordinance, that to all intents and purposes the case was tried 'upon the matters embraced in the plea, and the railway company having introduced evidence fully as to the matters involved, and the jury having been instructed in reference to the same, and having passed upon the issues submitted, we are of opinion that the ruling of the court, if deemed erroneous, should be treated as a mere irregularity, not affecting the merits of the controversy. This position, in our opinion, is fully supported by the doctrine of the Supreme Court, announced in the early case of McClenny v. Floyd's Adm'r, 10 Tex. 159, 164, in the following language: "Where, notwithstanding the ruling upon the plea, the case has been tried upon the matters embraced in it; the defendant having introduced evidence, full to those matters, and the jury having been instructed in reference to them, and having passed upon them, as if they were legally in issue; and it has been made manifestly to appear that the plea could not possibly have availed the defendant, had it been permitted to stand; and, consequently, that he cannot be benefited by a reversal of the judgment, we can perceive no good reason why the erroneous ruling, upon the sufficiency of the plea, should not be treated as a mere irregularity in practice, not affecting the real merits of the controversy, and not affording a ground for reversing the judgment."

■ The contention is made by the railway company that, because the general allegation of negligence upon which special issues Nos. 3, 4, and 5 were predicated were limited by more specific allegations,

the court erred in submitting the issue. The issue presented in special issues Nos. 3, 4, and 5, inquiring whether the evidence showed that the motorman' failed to stop the car, so as to reasonably enable the cab in which Mrs. Price was riding to pass over the railway track in safety ahead of the street car and without colliding therewith, was based precisely upon a ground of negligence alleged. The answers of the jury, finding said defendant guilty in that respect, in our opinion, was a summation, not of other specific grounds of negligence alleged, but of a variety of evidentiary facts that support the issue. We think the issue was properly submitted. Missouri, K. & T. Ry. Co. v. Reynolds, 103 Tex. 31, 122 S.W. 531; Austin y. De George (Tex.Civ.App.) 55 S.W.(2d) 585; James v. Hada (Tex.Civ. App.) 66 S.W.(2d) 365; Hunter v. B. E. Porter, Inc. (Tex.Civ.App.) 81 S.W.(2d) 774. This contention is overruled.

The railway company also contends that the answers of the jury to issue No. 12 is in conflict with their answers to issues Nos. 3, 4, and 5. As before shown, the jury found that the railway company was guilty of actionable negligence in failing to stop the street car so as to admit of the cab passing in safety and without colliding with the street car. In answer to issue No. 11, they found that the operator of the street car discovered and realized before the collision that the cab was approaching and would reach a position of danger; but, in answer to issue No. 12, found that this discovery was not made in time, so that by the exercise of ordinary care the operator could have avoided the collision. We do not think these answers conflict. The failure of the operator to make a timely discovery of the approaching cab, evidently, was a fact considered by the jury in convicting defendant of negligence under Nos. 3, 4, and 5, for the failure of its motorman to stop the car so as to reasonably enable the cab to pass over the railway track in safety ahead of the street car. This contention is also overruled.

The railway company also insists that, because issues Nos. 27 and 28 were based upon invalid provisions of subdivision 4 of Ordinance 2302 of the Charter of the City of Dallas, the court erred in submitting the issues, and that the answers of the jury thereto can form no proper basis for the judgment. Plaintiffs alleged that there was in force, at the time of the accident, an ordinance of the city providing: "Section 4. That any person operating a street car shall exercise due care with respect to keeping a lookout for persons and vehicles on or approaching the street car track upon which the street car is being operated— By 'due care,' as used in this section, is meant the care that a person of ordinary prudence would use in the same or similar circumstances," and alleged further that, the operator of the street car failed to exercise due care (as defined in the ordinance), to keep a reasonable lookout for the vehicle in which Mrs. Price was riding, thereby causing the collision. Issues Nos. 27 and 28, and answers of the jury thereto, are as follows:

"Special Issues Number Twenty-Seven. Do you find from a preponderance of the evidence that the operator of the street car on the occasion in question, failed to exercise due care with respect to keeping a lookout for the taxicab in which Mrs. Price was riding while such taxicab was on, or approaching the street car track? Answer Yes or No. Answer: Yes.

"Special Issue Number Twenty-Eight. Do you find from a preponderance of the evidence that the failure, if any you have found, in answer to the last preceding issue, was a proximate cause of Mrs. Price being injured? Answer Yes or No. Answer: Yes."

This ordinance, in our opinion, is simply a declaration of the common law on the subject, and while specially pleaded and its violation alleged, the legal effect is the same as if the facts were alleged without reference to the existence of the ordinance. However, we cannot agree that the ordinance is invalid. In Dallas Ry., etc., Co. v. Bankston, 51 S.W.(2d) 304, the Commission of Appeals held that a similar ordinance, requiring the motorman to keep a "vigilant watch" for all vehicles, either on the track or moving toward it, was valid. The contention is overruled.

Both the railway and cab companies contend that, as plaintiffs did not allege the displacement of Mrs. Price's uterus, nor allege other injuries from which, under the evidence, such displacement naturally and necessarily resulted, that evidence of such an injury, although admitted without objection, formed no

proper basis for recovery, therefore the court erred in refusing to submit requested issue No. 7 by the railway company, directing the jury not to consider any testimony in regard to the displacement of Mrs. Price's uterus nor allow damages therefor. In regard to the injuries received by Mrs. Price, plaintiffs alleged, in substance, that by reason of the collision between the cab and the street car she was thrown with great force and violence against the sides and parts of the cab in which she was riding;· that, as a result, she was caused to suffer a miscarriage; that there developed shortly a definite pain in her back and sides, especially that portion of her back just between her ribs and the connection with the spinal column; that such pain was constant and fixed whether she was standing, sitting, or lying down, and that she was caused to suffer a severe nervous shock, remained highly nervous for several weeks, suffered from a pelvic congestion and infection, and that the condition of painfulness along the region of her spinal column and· pelvic area has continued, etc. These allegations, in our opinion, formed a sufficient basis for the introduction of evidence as to the displacement of the uterus and resultant consequences. In a similar situation presented in Smith Oil Co. v. Riggs, 111 Tex. 173, 230 S.W. 139, 140, Justice Greenwood, speaking for the Supreme Court, said: "The court has never departed from the decision by Chief Justice Stayton in Missouri P. Ry. Co. v. Mitchell, 72 Tex. [171] 173, 10 S.W. 411, that the effect of precise injuries alleged may be proven. The very purpose of averring that a plaintiff is afflicted with a certain disease as the result of actionable injury is to give notice to the defendant that compensation is sought for the·pains and infirmities which attend the disease. The pains and infirmities are necessarily included in the allegation of the disease. Would it be contended that under the allegation of neurasthenia proof could not be offered of the effect of that disease on muscular control? No less admissible is proof of the disease's effect on vision. The principle involved does not change with the portion of the body effected." To the same effect, see Norwich, etc., Co. v. Davis (Tex.Civ.App.) 293 S.W. 932, and authorities cited; Cohen v. Hill (Tex. Civ.App.) 286 S.W. 661; International & G. N. Ry. Co. v. Pina, 33 Tex.Civ.App.

680, 77 S.W. 979; Pecos & N. T. Ry. Co. v. Coffman (Tex.Civ.App.) 160 S.W. 145. We therefore overrule the assignments and propositions relating to this matter.

The railway and cab companies also complain of the charge instructing the jury that "there may be more than one proximate cause of any event," as being upon the weight of evidence and in the nature of a general charge. We overrule these propositions. The instruction, in our opinion, was neither upon the weight of evidence nor in the nature of a general charge, but correctly informed the jury in regard to an essential element of the doctrine of proximate cause, and was in response to the case presented both by pleading and proof.

The railway and cab companies each separately complained of the definition of "unavoidable accident," given by the court; their contentions being that the definition, in not taking into consideration anything but the negligence of the railway company (in the instruction as to it), and not taking into consideration anything but the negligence of the cab company (in the instruction as to it), constituted the submission of "accident" as a more general and additional submission of the negligence of each of these defendants, unduly accentuating the issues as to the negligence of these defendants, and was a "corresponding soft-pedaling of the negligence of Mrs. Price."

We think the evidence authorized the submission of unavoidable accident as to each of these defendants, correctly submitted, as follows: "Do you find from a preponderance of the evidence that the collision between the street car and the automobile on the occasion in question was not an unavoidable accident as to the defendant, Dallas Railway & Terminal Company?" In connection with the above, the court correctly defined "unavoidable accident" and submitted the issue in similar form as· to the defendant cab company. These propositions, in our opinion, are without merit, hence are overruled.

As heretofore stated, we hold that all findings by the jury are sustained by evidence, and we adopt the same as our conclusions of fact on the respective issues, hence overrule the contention of the railway company that the answers to issues Nos. 27 and 28 are not supported by evidence.

Propositions Nos. 1, 2, 3, 4, 5, 6, and 7, urged by the cab company, are germane to assignments based upon bills of exception taken to certain portions of the opening argument of Mr. Martin, of counsel for plaintiffs. The burden of the complaint is that the argument advised the jury how to answer certain issues and the effect of the answers. The record fails to disclose that any objection was made while the argument was being made, but were held in reserve and urged for the first time in the motion for new trial. Basing his argument upon the evidence, we think it obvious that counsel for plaintiffs was endeavoring to bring the jury to a correct understanding of the issues, and how, in his opinion, they should be answered. This was permissible; in fact, if, after arraying the facts of a case before the jury, counsel is forbidden to draw conclusions and insist upon answers favorable to his client, his argument necessarily would be left unfinished, and without pith or point. In the recent case of Dallas Ry., etc., Co. v. Bankston, 51 S.W.(2d) 304, 310, the Commission of Appeals (opinion by Judge Sharp) approved by the Supreme Court, held that: "Broadly speaking, counsel may exercise the right to advise the jury how, in his opinion, from the evidence, the issues submitted should be answered." We think that was precisely what counsel was endeavoring to do by the argument brought under review. If the method of argument pursued was thought to be prejudicial, objection should have been urged while the same was in progress, as the line of argument being pursued could have been interrupted, and on order of court abandoned. But remaining silent and raising the question for the first time in its motion for a new trial, we think the cab company is estopped to insist upon the objection, and this even if the argument should be considered harmful in the respects mentioned. However, we fail to find anything prejudicial in the argument; besides, the correctness of the findings of the jury are not challenged by the cab company as not being sustained by the evidence. We therefore overrule this group of assignments and propositions.

The cab company also urges propositions Nos. 14, 15, and 16, germane to assignments based upon exceptions to portions of the argument of Mr. Charlton, counsel for the railway company; the insistence being that one joint tort-feasor is permitted to seek reversal of the judgment because of improper argument of counsel for the other joint tort-feasor. We overrule this contention. The cab company did not appeal from the judgment for contribution against it in favor of the railway company, and certainly plaintiffs should not be made to suffer by reason of the situation presented. In view of the provision of the statute (article 2212, R.S.1925) abrogating the common-law rule in permitting contribution between joint tort-feasors, we doubt the propriety of complicating the main suit with a controversy among joint tort-feasors in regard to the matter of contribution. Clearly, we think, the statute contemplates that the right of action of one joint tort-feasor against another for contribution does not arise until after judgment in the main suit, and only then where the moving party has paid more than his just proportion of the judgment; however, in the instant case, we are not called upon to rule, nor do we make a ruling in regard to this matter.

Failing to find reversible error, the judgment of the trial court is in all things affirmed.

Affirmed.

### On Rehearing.

Among other defenses, the railway company alleged: "That Article 1329 of the Revised Ordinances of the City of Dallas, 1921, provided, in substance, that any vehicle, before entering an intersection, shall slow down to not more than 3 miles an hour, but that the driver of said taxi-cab, long before he reached St. Paul Street, saw that the light was orange and would be green by the time he reached there, and instead of slowing down before entering the intersection, he speeded up and entered the intersection at a speed greater than 3 miles per hour, in violation of said ordinance; that if he had slowed down to 3 miles an hour before entering the intersection, there would have been no collision and he would have had his automobile under control and would have stopped before he reached the street car, and the negligence of the driver in not so reducing his speed was the sole proximate cause of the collision."

This plea was stricken out on special exceptions urged by plaintiffs, based on the idea that the ordinance pleaded was in conflict with the state speed regulations, therefore void. While we disagreed with the trial court and sustain the validity of the ordinance, yet for another reason held that the action of the court, in striking out the

plea, was nevertheless correct, in that we held that article 1329 of the City Ordinances, upon which the special defense was based, was inapplicable; saying in that connection that: "We think it obvious that this ordinance was designed to regulate traffic at street intersections, other than those controlled by the signal and light system, as was the intersection where the collision occurred, hence the ordinance plead not being applicable to the situation, the court did not err in striking out the plea."

In its motion for rehearing, the railway company complains that, in arriving at the conclusion that the ordinance in question was not applicable to the facts of the case, we erred in taking cognizance of the entire article, instead of confining our consideration to the particular part emphasized in the plea. We have heretofore set out in full the plea of the railway company, from which it appears that article 1329 of the Revised Ordinance of the City of Dallas was set up; the provisions thereof requiring vehicles, before entering an intersection, to slow down to not more than three miles per hour, being particularly stressed. As the ordinance was pleaded by reference to article number, we were authorized, in determining the correctness of the action of the court in striking out the plea, to take cognizance of the entire article. Courts are at liberty to take judicial notice of a city ordinance either when its existence is admitted, or the same is pleaded by reference to its title or article. See 23 C.J., Evidence, 139, § 1961; Seattle, etc., R. Co. v. Seattle (C.C.) 190 F. 75; Buhner v. Reusse, 144 Minn. 450, 175 N.W. 1005. Also see 33 Tex.Jur. p. 557, § 122. So, we do not think it can be said that we added to or amplified the record, as contended by appellant; we simply took judicial knowledge of the entire article pleaded by number, the existence of which, in this way, was admitted by the appellant.

We held further that, even if the action of the court in striking out the defensive plea was erroneous, the same was harmless, in that to all intents and purposes the case was tried upon the matters embraced in the plea, were submitted to the jury and found adversely to the railway company. With reference to the latter holding, the railway company, in its motion for rehearing, has this to say: "Furthermore, where a case is tried on one theory in the trial court, and briefed on that same theory by the parties in the appellate court, the Court of Civil Appeals errs in disposing of the case upon a theory not raised in the trial court, and not raised by the briefs of any party in the appellate court. We find no contention in the trial court, or in the appellate court, or in the pleadings, the transcript, the statement of facts, or briefs, to the effect that the ordinance involved was not applicable to this intersection. We find no contention in the trial court that the ordinance should be construed as inapplicable to the facts of this case, and to this intersection. We find no such contention in the brief of any party. We find no contention that the matters involved in this defense were submitted in other issues, thereby rendering this exception immaterial."

Thus the contention is made that we disposed of the question or phase of the case under consideration upon a theory that previously had not been raised during the progress of the trial. We dissent from the view that a theory was adopted by us other than the one on which the case was tried; what we did was to find and state reasons, other than those previously suggested, for the holding that the action of the court, in striking out the plea on exception, was correct; but even if not correct that the erroneous ruling was rendered harmless, and became a mere irregularity not affecting the merits of the cause, for reasons fully stated in the original opinion.

After duly considering all grounds set up by the railway company, for rehearing, we see no reason for changing our decision, therefore overrule the motion.

Overruled.