### C. L. Smith Oil Company v. Jesse Riggs.

#### No. 2883. Decided April 20, 1921.

#### (230 S. W., 139.)

**1.—Personal Injury—Pleading and Proof—Impaired Vision.**

Where plaintiff alleged, as the result of personal injury, neurasthenia and permanent impairment of his whole nervous system, it was permissible for a physician who attended him to testify that the patient suffered impairment of vision as a result of nerve weakness, not of any organic disease of the eye though he had not alleged such impairment of vision as a result of his injury. (Pp. 173-177).

**2.—Same—Disease—Symptoms.**

It is sufficient to allege the disease claimed to have resulted from injury to the person, without pleading the accompanying sufferings or disabilities which are merely symptoms thereof. These, though not specifically alleged, may be proved under the allegation of such disease. Proof of the symptoms is admissible as evidence of the disease; and the pains and infirmities which atttend a disease are admissible under allegation of the disease as a result of the injury. Campbell, Receiver, v. Cook, 86 Texas, 632, distinguished. (Pp. 177, 178).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

Riggs recovered judgment below against the C. L. Smith Oil Co. for personal injuries. Defendant having appealed, an opinion was pronounced reversing this recovery for asserted error in admitting the testimony here discussed; but upon motion for rehearing the question as to the correctness of such ruling was certified to the Supreme Court and is here answered.

*Hunt, Myer & Teagle,* for appellant.

Where damages actually sustained do not neccessarily result from the act complained of, and are consequently not implied by law, the plaintiff must state in his declaration the particular damage which he has sustained, for notice thereof to defendant. Otherwise the plaintiff will not be permitted to give evidence of it on the trial. Campbell v. Cook, 86 Texas, 632; So. Pac. Co. v. Martin, 98 Texas, 322; T. & P. Ry. v. Curry, 64 Texas, 87; Dallas Oil, etc., Co. v. Carter, 134 S. W., 418; Dallas, etc., Ry. v. Pettit, 105 S. W., 42; Wells Fargo Ex. Co. v Boyle, 87 S. W., 164; Railway Co. v. Ison, 83 S. W., 408; City of Marshall v. McAllister, 43 S. W., 1043; M., K. & T. Ry. Co. v. Dawson, 29 S. W., 1106; M., K. & T. Ry. v. Cook, 27 S. W., 769; 3 Sutherland on Dam., 426; Railway Co. v. Linton, 109 S. W., 942; Texas, State Fair v. Marti, 69 S. W., 432.

*Caruthers & Brown,* for appellee.—That the general allegation that plaintiff's whole nervous system had been shocked and permanently injured, and that as a result the plaintiff has since suffered and will continue to suffer from neurasthenia, will permit the plaintiff to show the effects of neurasthenia on each and every nerve comprising the nervous system. M. K. & T. Ry. Co. v. Hawk, 69 S. W., 1038; S. W. Tel. & Tel. Co. v. Evans, 116 S. W., 419; Rapid Transit Co. v. Allen, 117 S. W., 487; Ft. W. & Denver Ry. Co. v. Morrison, 123 S. W., 621; St. L. S. W. Ry. Co. v. Kelton, 66 S. W., 887; Dallas v. Jones, 93 Texas 38; M. K. & T. Ry. Co. v. Smith, 172 S. W., 929.

That where there is a contested issue as to whether or not the plaintiff is suffering from neurasthenia of his whole nervous system and has his whole nervous system impaired, testimony that the neurasethenia has caused the plaintiff to have trouble with his eyes, and an inability on his part to read steadily, with a tendency to tire easily, and that this neurasthenia also causes him to have a blurred and zigzag sensation after he reads a while, is admissible as a circumstance to show that he is really suffering from neurasthenia or nerve exhaustion as he alleges, even though, because not specially pleaded, it cannot form the basis of an allowance for special damages. H. & T. C. R. R. Co. v. Hanks, 124 S. W., 137; I. & G. N. Ry. Co. v. Thompson, 37 S. W., 24; Telephone Co. v.

Evans, 116 S. W., 421; Texas Midland R. R. Co. v. Simmons, 152 S. W., 1107; S. A. & A. P. Ry. Co. v. Callihan, 86 S. W., 929.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The certificate of the Honorable Court of Civil Appeals of the First Supreme Judicial District is as follows:

"This case is now pending on motion for rehearing. This suit was brought by appellee, Jesse Riggs, against appellant C. L. Smith Oil Company, to recover damages for personal injuries alleged to have been suffered by him by reason of the explosion of one of appellant's boilers, and by reason of the negligence of said appellant. Judgment was for appellee for $5000.00. In appellee's petition he alleges his injuries as follows:

"'That by reason of said explosion the plaintiff was thrown about ten feet and was burned and scalded all over his face and arms and over his back, particularly his left kidney, and plaintiff's legs were badly burned and scalded; that plaintiff's left ankle and ankle joint were badly burned, and said ankle was permanently injured; that as a result thereof plaintiff has very poor use of said ankle and will continue to have poor use thereof at all times hereafter; that plaintiff's kidneys were injured by said burns, and plaintiff will probably have kidney trouble therefrom at all times hereafter; that the calf of plaintiff's right leg was severely bruised and permanently injured; that plaintiff was also struck in the head by some object thrown by said explosion, and his head was thereby injured; that plaintiff's whole nervous system has been shocked and premanently injured, and as a result of his said injuries the plaintiff is now suffering and will continue at all times hereafter to suffer from neurasthenia; that plaintiff was confined to his bed for eighteen days and suffered and will continue to suffer great mental and physical pain and anguish; and that plaintiff's ability to earn a livelihood has been permanently impaired. That by reason of the foregoing facts the plaintiff has been damaged in the sum of $10,000.00.'

"On the trial of this case Dr. Ross, a witness for plaintiff, testified, without objection, as follows:

"I examined Jesse Riggs in February, 1914, and I have had him under observation since then, not constantly, but he has been coming to consult me from time to time. He came to me complaining of a variety of nervous symptoms, and I gave him a thorough physical examination; I had him stripped, and I found that he was covered with quite a number of scars on his back and legs and various parts of his body, but they were all healed. He was suffering then with his eyes and with headaches, and with pain in his back and with trembling of the hands and jerking of the muscles, not constantly, but at times he would have these jerkings; and he had all the symptoms of what we term neurasthenia.

That is a nervous condition which is frequently brought about by shock or injury; and he gave a history of being in this boiler explosion, and all these symptoms following that. He had not complained of any nervous symptoms before this; so I thought that was the cause of his nervous condition. His nervous condition is one of traumatic neurasthenia. I made an examination of his knee reflexes, and found his reflexes decidedly diminished, which indicates a neurasthenic condition—nerve fatigue or exhaustion. Traumatic neurasthenia, or that condition, is most usually caused by shock, or it is caused by a nervous shock.

" 'I found a scar on the patient's shoulders, one on his back, and on his legs. The scar on his leg was on his ankle on the left leg; there was some atrophy there, that is, the left leg wasn't quite as large as his right leg at the time of my first examination. It showed to have been a recent scar. I said that I had examined him and had him under observation several times since my first examination. In my subsequent examinations the symptoms were all practically the same except the tremors—the muscle trembling—but all of the subjective symptoms are the same. There has been an improvement in that left leg, and the left leg and the right leg are practically the same now.'

"After the witness had given the above testimony he was asked the questions and gave the following answers over the objection of defendant:

" 'Q. Doctor, based on your observation of his case, just tell the jury what you think of Jesse's chance of ultimate recovery.

" 'A. I don't think he will ever completely recover; I think the boy's main trouble is going to be with his eyes—they seem to be more decidedly—'

"Mr. Teagle, attorney for defendant here interposed: 'Defendant objects to any testimony from this witness tending to show that the plaintiff's eyes have become dimmed and weakened as a result of the injuries complained of by plaintiff, or any evidence of injury to the plaintiff's eyes or eyesight. because there was no allegation in the petition sufficient to put defendant on notice that such injuries would be claimed.' Which objections were then and there overruled by the court and the defendant excepted, and court permitted said witness to continue as follows:

" 'Q. Dr. Ross, tell the jury just what effect this nerve exhaustion or neurasthenia had as you found it on Jesse Riggs' eyes.

" 'A. Well, there was an inability on his part to read steadily, he was tired easily. At the beginning he could read very readily, but then after reading a little bit then it would become blurred and there would be a zigzag sensation, all due to exhaustion, and not to any organic disease of the eye itself, but just simply due to that nerve weakness or fatigue.

" 'Q. In other words, a nerve weakening in the eyes?

" 'A. Yes sir.'

" 'In view of the fact that the alleged injuries to plaintiff were sufficiently proven by the testimony adduced, and no effort was made by defendant to disprove the same, we held in our opinion, a copy of which we have directed the clerk of this court to send up with this certificate, that the testimony of Dr. Ross objected ιο was erroneously admitted. As we are in doubt as to the correctness of said holding, we deem it advisable to certify to your Honorable Court the following questions, towit.

"Question 1. Was the testimony of the witness, Dr. Ross, objected to, above set out, admissible under the allegations of injuries set up in appellee's petition, as set out above?

"Question 2. Did the failure of appellant to object to the previous testimony of the witness, above set out, render the objection to his subsequent testimony, if otherwise inadmissible, unavailable?"

To Question 1, we answer "Yes."

The petition alleged permanent injury to plaintiff's whole nervous system, and also that as a proximate result of his injury plaintiff was suffering and would continue to suffer from neurasthenia.

Under the medical testimony set out in the certificate, plaintiff was suffering and would continue to suffer from traumatic neurasthenia, which was a derangement of the nervous system, and the condition of plaintiff's eye was both a symptom and a result of traumatic neurasthenia.

It can hardly be questioned that one who alleges that a certain disease has resulted to him from an injury can prove the truth of the allegation by establishing that he has the symptoms of the disease.

Thus, it was held that evidence was properly admitted of kidney trouble, because symptomatic of cellulitis, a diseased condition of the covering of the bones of the foot, where the issue was whether the injured party had cellulitis, Houston & T. C. R. Co. v. Hanks, 58 Texas Civ. App., 298, 124 S. W., 138; and it was likewise held that evidence was admissible to show the spitting up of blood, where this indicated an injury to the chest, which was alleged. Ft. Worth & R. G. Ry. Co. v. White, 51 S. W., 856.

There would seem, in fact, no more reliable means of proving a disease not discernible by the senses, than by establishing its symptoms; and it is neither necessary nor proper to allege the symptoms of a disease, which is the alleged result of an injury.

The court has never departed from the decision by Chief Justice Stayton in Missouri P. Ry. Co. v. Mitchell, 72 Texas 173, 10 S. W., 411, that the effect of precise injuries alleged may be proven.

The very purpose of averring that a plaintiff is afflicted with a certain disease as the result of actionable injury is to give notice

to the defendant that compensation is sought for the pains and infirmities which attend the disease. The pains and infirmities are necessarily included in the allegation of the disease.

Would it be contended that under the allegation of neurasthenia proof could not be offered of the effect of that disease on muscular control? No less admissible is proof of the disease's effect on vision. The principle involved does not · change with the portion of the body affected.

The following cases apply the principle that results naturally flowing from a disease averred may be proven, though manifested in an organ of the body different from that directly injured. · Missouri K. & T. Ry. Co. v. Edling, 18 Texas Civ. App., 171, 45 S. W., 409; Missouri K. & T. Ry. Co. v. McCutcheon, 33 Texas Civ. App. 557, 77 S. W., 233; Missouri K. & T. Ry. Co. of Texas v. Smith, 172 S. W., 750; Missouri K. & T. Ry. Co. of Texas v. Hawk, 30 Texas Civ. App., 142, 69 S. W., 1039.

In the case last cited evidence was held correctly admitted which showed impaired vision, not alleged, because impairment of the vision was the result of a diseased nervous system, of which due averment was made.

The decision in Campbell, Receiver v. Cook, 86 Texas, 632, 40 Am. St., 878, 26 S. W., 487, that "to admit proof of damages which do not necessarily result from the injury alleged, the petition must set up the particular effects claimed to have followed the injury" has no application to this case.

Here, the petition alleged neurasthenia as a particular effect of the injury, and the proferred testimony went no further than to tend to establish, first, that a condition of vision existed which was indicative of neurasthenia, and second, that a condition of vision existed and would continue to exist as a result of the neurasthenia with which plaintiff was afflicted.

Our answer to Question 1 renders unnecessary any answer to Question 2.