## NORWOOD BLDG., Inc., v. JACKSON.
### No. 2534.

Court of Civil Appeals of Texas. Waco.
Oct. 14, 1943.

Rehearing Denied Nov. 24, 1943.

Hart & Brown, of Austin, for appellant.
Cofer & Cofer, of Austin, for appellee.

HALE, Justice.

Maudine Jackson sued Norwood Building, Inc., a corporation, for damages on account of injury to her left leg when, on April 9, 1942, she was struck by the door of a sidewalk elevator. She alleged in her original petition upon which the case was tried that defendant owned and operated an office building situated on the north side of Seventh Street near Congress Avenue in the city of Austin, Texas, known as the Norwood Building; that the sidewalk elevator was a part of and used in connection with the building and was being operated by defendant at the time of her injury; that on the occasion in question she was proceeding along the sidewalk enroute to her place of work in said building when the trap doors, in and flush with the sidewalk through which the elevator ascends from the basement of said building, were suddenly opened and the elevator began to rise without warning; that the defendant was negligent in certain particulars, among others, as follows: (a) In failing to employ a guard and lookout to warn pedestrians approaching the trap doors at the time they were about to open that said elevator was about to rise to the surface of the walk, (b) in failing to use ordinary care to warn plaintiff that the elevator was about to rise at the time and place in question, and (c) in failing to equip said elevator with some character of mechanical signal or warning device to apprise pedestrians that the elevator was about to rise; and that each of such negligent omissions on the part of defendant was a proximate cause of her injuries and damages. Defendant answered with a general denial and pleas of contributory negligence. Upon the conclusion of all the evidence, plaintiff filed a trial amendment further pleading that defendant was negligent in failing to use ordinary care to see that none other than employees of the Norwood Building operated the sidewalk elevator, and that such negligence was a proximate cause of her injuries. The jury found each of the foregoing issues in favor of plaintiff. The court accordingly rendered judgment in favor of plaintiff for the found damages in the sum of $3,943, and defendant has appealed.

Under the four points in its brief, each of which is properly raised by appropriate assignments, appellant says the judgment should be reversed because: (1) there is no evidence that it owned or operated the Norwood Building, or its sidewalk elevator, or is responsible for the acts of the persons operating such elevator at the time appellee was injured; (2) there is no evidence that any act or omission of appellant or the persons operating the Norwood Building was the proximate cause of appellee's injury; (3) the trial court erred in permitting appellee, after introduction and close of all evidence, to file a trial amendment alleging a new ground of negligence and recovery; and (4) the judgment is excessive.

In order to carry this case to the jury, it was necessary to adduce some evidence tending to show that appellant either owned or was in charge of the operation of the Norwood Building at the time of the injury. In the absence of such evidence, the alleged conduct of appellant could not in law constitute actionable negligence on its part. Moreover, in arriving at the conclusion as to whether appellant did in fact own or operate such building, the jury was not authorized to pyramid one presumption or inference upon another because a presumption of fact can never be made to rest upon another fact presumed. Was there, then, any competent evidence from which the jury might legally infer that appellant either owned or operated the Norwood Building at and prior to the time of this injury and that one or more of the omissions complained of constituted negligence on its part and a proximate cause of such injury?

Appellee testified that she had lived in Austin all of her life; that she was, at the

time of her injury, in the employ of a physician who maintained his office on the fourteenth floor of the Norwood Building; on the morning of the accident she was enroute to her accustomed place of work and while proceeding along the sidewalk adjacent to such building she stepped upon one of the trap doors when "something threw my left foot up suddenly with quite a bit of force and threw me forward and then something struck the shin of my left leg"; as she approached the trap doors, no one was standing there giving any warning and no sort of signal or sound was given; after the door struck her, she went inside the building and up the passenger elevator to the fourteenth floor, found two colored porters who were employees of the building, they unlocked the doctor's office for her and she immediately phoned the doctor; in about thirty minutes the doctor arrived in company with Mr. Wells, who was the manager of the Norwood Building, and Mr. Wells then stated: " 'that is what we get for having Salvation Army help,' that he was not supposed to touch that elevator without his men being out there, and his men were not out there to give the signal."

Appellant introduced various witnesses who each testified that he worked at the Norwood Building; Williams said he was head porter of the five colored porters employed by the Norwood Building; Franklin and Seales each said they were porters at the building and that Mr. Wells was manager and "boss." Mr. Swenson testified he was engineer at the Norwood Building, had been such continually since the building had been opened up for use and had supervision of its elevators and other mechanical equipment; that the sidewalk elevator could have been equipped with a signal or bell to warn people on the street it was about to rise, but that it was not so equipped. Mr. Wells did not testify. Berry and Carmona were tendered as witnesses by appellant and they each testified that they were in the employ of Capitol Paper Stock Company at the time of the accident and had never been in the employ of the Norwood Building; they had come to the building on the occasion in question, as was their daily custom, in order to get the waste paper which had been collected in the basement during the night before; they were later than usual on the morning of the accident and after they had loaded the paper on the elevator, they looked for the porters of the Norwood Building, to-wit, Williams

and Franklin, to carry the elevator up; they were unable to find either of the porters and thereupon Berry ascended to the sidewalk in order to warn pedestrians of the approach of the elevator, stomped three times on the trap doors, and Carmona set the elevator in motion on its upward pull.

The witnesses tendered by appellant testified, in effect, that some time prior to the accident the waste paper from the building was delivered to employees of the Salvation Army; thereafter the porters gathered up the waste paper from the building each night and conveyed it to the basement where it was placed in containers; the two employees of the Capitol Paper Stock Company would drive a truck to the building each morning at about 8 o'clock, stopping on the street near the sidewalk elevator, would then go to the basement, load the waste paper on to the elevator, which would then be moved upward to the sidewalk by one of the employees of the Norwood Building; the elevator would not be put in motion on its ascent until another employee of the building had first gone up to the sidewalk in order to see that everything was clear and safe and when this had been done, the employee on the sidewalk would signal to the operator below by making three knocks upon the trap doors and would stand on the doors until the elevator in rising caused them to open upward. Swenson testified that he maintained a guard or "starter" who watched the passenger elevators and gave instructions to the operators when to start and stop, but that he did not have anyone in the basement to watch the sidewalk elevator and see that no one but building employees used it; that on one occasion he caught the two employees of the Capitol Paper Stock Company operating the sidewalk elevator without the aid or presence of any of the building's porters and at that time "I told them about ten days or a week before this happened, under no circumstances to operate that elevator without someone of the Norwood Building or attached to it to work it for them."

There was no indication during the trial of the case by affirmative pleadings, evidence or otherwise that appellant was not in active charge of the operation of the building at all times material to this suit. There was no evidence of any signal or warning given to appellee that the doors were about to open or the elevator about to rise except the testimony of Berry wherein he testified that after he had given Carmona

the signal to come up, he saw appellee but did not think she would reach the trap doors before they opened; that as appellee was about to step on the walk, he said, "watch the elevator, lady," but she did not seem to hear him and struck the west corner of the trap door.

Under the record before us, we cannot say there was no evidence that Norwood Building, Inc., a corporation, was in charge of the operation of the structure known as the Norwood Building at and prior to the time of this injury. Since appellant did not deny under oath the existence of the corporate capacity in which it was sued, no proof of that fact was required. The use of the abbreviation "Inc.," in its name merely indicated that it was incorporated. Carver Sound Equipment Co. v. Tonahill, Tex.Civ.App., 128 S.W.2d 860. Obviously, the porters, engineer and building manager engaged in the actual operation of the structure known as Norwood Building could not have been employed by the structure as distinguished from the legal entity operating the same. Therefore, when some of the witnesses testified they were and others testified they were not employed by the "Norwood Building," without adding the suffix "Inc.," we think the counsel, trial judge and jury were each warranted in concluding therefrom that all such witnesses were referring to the legal entity rather than to the structure, and that the legal entity thus referred to was the same identical person as "Norwood Building, Inc.," a corporation. Mills v. Snyder, Tex. Civ.App., 8 S.W.2d 790; Globe Laundry Co. v. McLean, Tex.Civ.App., 19 S.W.2d 94; Mrs. Baird's Bakery v. Davis, Tex.Civ. App., 54 S.W.2d 1031.

If appellant was in active charge of the operation of the building, then it undoubtedly owed to appellee the duty of exercising such degree of care in the maintenance and operation of the sidewalk elevator as a person of ordinary prudence would have exercised under the same or similar circumstances in order to render its use of the sidewalk reasonably safe to members of the public. It was likewise charged with reasonable anticipation of such probable consequences as in a continuous sequence might reasonably and probably result from a breach of that duty. Appellant insists, however, that as a matter of law the operator of the building could not be required to anticipate this injury because it says under the circumstances

shown by the evidence in this case, such injury was caused solely by the independent acts of Berry and Carmona, neither of whom was in the employment or under the control of such operator. It is, of course, well settled that one person may not be held liable for damages caused solely by the acts or omissions of another over whom he has no control. But under the evidence in this case, was the negligence of Berry and Carmona necessarily the sole cause of the injury, or did their conduct necessarily constitute a new and independent cause between the negligence, if any, of appellant and the injury complained of?

We have found no Texas case dealing with the degree of care and foresight which the operator of an office building owes to members of the public in regard to the maintenance and operation of a sidewalk elevator used in connection therewith. It appears to us, however, that since such use is fraught with unusually dangerous potentialities unless properly guarded and maintained, the operator should be held upon the most elementary principles to the exercise of such degree of diligence in each case as may be reasonably commensurate with the inherent dangers incident thereto. Consequently, under the evidence in this case we are of the opinion that the failure of appellant to equip the sidewalk elevator with some character of mechanical signal or warning device, its failure to warn appellee that the elevator was about to rise, or its failure to see that none other than its own employees operated the same, could in fact and in law constitute actionable negligence on its part. While the injury would not have occurred but for the negligent conduct of Berry and Carmona, we are unwilling to hold as a matter of law that their negligence was the sole cause of the injury, or that their conduct constituted an intervening agency or a new and independent cause between the negligence of appellant and such injury. On the contrary, we think the evidence as a whole presents mixed questions of law and fact for the court and jury rather than pure questions of law for the court alone as to whether appellant in the exercise of due care ought reasonably to have anticipated and foreseen that Berry and Carmona might do the very things they actually did do, and that such negligence on their part, concurring with its own negligence, might in reasonable probability result in injury to appellee. We believe our

conclusions are supported by reason and the greater weight of authority in other jurisdictions. Du Val v. Boos Bros. Cafeteria Co., 45 Cal.App. 377, 187 P. 767; Ray v. Manhattan Light, Heat & Power Co., 92 Minn. 101, 99 N.W. 782; Rosenholz v. Shattuck Co., 112 Misc. 468, 183 N.Y.S. 23.

In view of the expressed provisions of Rule 67, Texas R.C.P., we do not think the trial court erred in permitting appellee to file her trial amendment because such amendment was timely filed under leave of the court for the purpose of causing the pleadings to conform to issues raised by evidence which was introduced without objection by appellant.

The jury found that $3,800 would fairly and reasonably compensate appellee for her injuries. In this connection the court instructed the jury, in effect, that they might consider appellee's loss of time in the past, her loss of earning capacity in the future and the physical and mental pain suffered and to be suffered by her. The judgment recites that $143 of the recovery awarded represents the agreed value of certain expenses necessarily incurred by appellee which was not submitted to the jury. Appellant interposed no objection to such instruction or finding by the court. No complaint is made with respect to any improper argument to the jury or as to any matter which might have been calculated to incite or arouse passion or prejudice on their part. Appellee and her attending physician were the only witnesses who testified as to the nature, extent and duration of her injuries.

The evidence indicates that appellee was a young woman of robust health, earning $65 per month as office assistant and stenographer at and prior to the time of her injuries. She testified that she was confined to her bed for one month, thereafter to her home for two weeks, and that she had not been able to resume work up to the time of the trial on November 6th; that she suffered intense pain both day and night during the first month after her injury, and that up to the time of trial "I still suffer nearly all the time"; and that from her experience as a nurse "I am sure I have a permanent nerve injury and there is quite a bit of congestion there in the tissues."

Appellee's attending physician testified that she sustained a very ragged, bruised and lacerated puncture wound on the outer part of her left leg between the tibia and fibula which must have been two inches in length and two inches upward and inward; there was no injury to any of the bones in her leg; he cut off the bruised tissues, trimmed the wound, sewed it up and administered tetanus antitoxin; he saw the patient at her home daily for some time and thereafter at regular intervals during her confinement in bed and at home; the blood from the injury extravasated out into the tissues down to her foot and upward to her knee; the wound developed a hematoma or blood clot which gradually absorbed; after the wound had healed, the patient continued to experience pain and a loss of sensation in the area around the wound which he attributed to a nerve injury of some kind; he could not tell whether the nerve injury would be permanent or not, "it might get alright completely, but it might not"; the wound left a scar which would be permanent; and the nature and extent of her injuries were such as to cause intense pain.

Although we are fully aware of the grave responsibility resting upon this court to pass finally upon the sufficiency of the evidence to sustain any finding of fact made by the jury, yet we cannot upon that ground alone properly set aside or revise any finding so made unless it appears in the exercise of a sound judicial discretion that the same is clearly against the overwhelming weight and preponderance of the competent, admissible testimony to such extent as to be wrong. Since varying degrees of physical pain are not susceptible of definite expression or ascertainment, the measure of the damages resulting therefrom must of necessity rest largely in the composite judgment and conscience of the jury. If appellee has in fact sustained a nerve injury and if such injury with attendant pain should continue indefinitely in the future, who can say with any degree of certainty that $3,800, if paid now in cash, would be unreasonable compensation for the same? We cannot do so.

Finding no reversible error in the case, the judgment of the trial court must be and is hereby affirmed.