## BEE LINE COACHES v. FOLTERMAN et al.

### No. 11942.

Court of Civil Appeals of Texas. Galveston.
Jan. 15, 1948.

Rehearing Denied Feb. 5, 1948.

Thompson, Knight, Harris, Wright & Weisberg, Adair Rembert, and James E. Henderson, all of Dallas, for appellant.

A. W. Hodde, of Brenham, Helm & Jones, Shirley M. Helm, and Albert P. Jones, all of Houston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellee, Mildred Folterman, a minor, through her father, Fritz Folterman, as next friend, for the recovery of damages from appellant, Bee Line Coaches, for personal injuries alleged to have been sustained by her in a collision in Washington County, Texas, between a bus owned and operated by appellant, and an automobile being driven by a third person not a party to this suit. Fritz Folterman sued in his individual capacity for loss of her services.

Appellee alleged that she boarded appellant's passenger bus for the purpose of going to Somerville, Texas; that the bus was late in leaving Brenham and that the bus driver undertook to operate the vehicle at a high, reckless and dangerous rate of speed as he proceeded along the highway, and that while being operated at a speed of between 50 and 55 miles per hour, on and over a narrow bridge, it collided with another car, causing the injuries complained of. Appellee alleged numerous specific acts and omissions on the part of appellant and the driver, claimed to amount to negligence, proximately causing the collision.

A jury found, in substance, in answer to special issues submitted, that at the time of the collision, appellant's bus was being operated at a greater rate of speed than that at which a prudent and cautious person engaging in the carrying of passengers for hire would have operated it, and at such a rate of speed as to endanger the lives and limbs of its passengers. That at the time and immediately before the collision, the operator of the bus failed to keep it under such control and failed to keep such look-out as would have been kept by a prudent and cautious person; that he failed to heed a warning sign of the approach of the narrow bridge, and that, after the discovery of the approach of the automobile with which the bus collided, he failed to make such application of the brakes on the bus as would have been made by a cautious and prudent person. The jury found that each of such failures was a proximate cause of the collision in question, and that each constituted negligence as that term was defined to the jury in the court's charge. The jury further found that such injuries and damages as plaintiffs received were not the result of an unavoidable accident. They returned a verdict in favor of appellee Mildred Folterman for $12,000, and in favor of Fritz Folterman for the loss of her services in the sum of $2,000. Judgment was rendered by the trial court in accordance with the jury's verdict.

Under appropriate points appellant complains of the trial court's failure to grant a new trial for the alleged reason that the jury's finding was so contrary to the overwhelming weight of the evidence as to show that they were actuated by passion, prejudice, or other improper motive. Appellant complains of the alleged error of the court in not sustaining its motion to strike the testimony of the appellee, Mildred Folterman, with reference to the speed at which the bus was traveling just prior to the collision, for the alleged reason that the testimony was based on conjecture, speculation and guesswork. It contends that the amount of damages awarded both of appellees was excessive.

It is undisputed in the record that Mildred Folterman boarded appellant's passenger bus at Brenham, Texas, for the purpose of going to Somerville. The collision occurred approximately 2½ miles north of

Brenham on a narrow bridge. A warning sign had been installed a short distance south of the bridge, cautioning the operators of approaching vehicles of the presence of the narrow bridge.

Mildred Folterman testified that just prior to the collision the bus was being operated at a speed of from 50 to 55 miles per hour, and that she did not notice that the driver slowed down the speed of the bus as it entered the bridge. She testified that the driver of the bus paid no attention to the warning sign at the approach of the bridge, and did not slow down the speed of the bus, and that she did not feel the application of the brakes before going on the bridge. All of this testimony was corroborated by appellees' witness Mrs. Taylor.

The bus driver testified that when he was about 50 feet from the south end of the bridge he observed the other car at a distance of some 300 feet to the north of the bridge, and that he was driving at the rate of between 30 and 35 miles per hour—not over 35 miles per hour at the time. He admitted that he did not stop the bus before the collision, and that he did not blow his horn.

Another witness on the bus testified that the other car was running at a high rate of speed and was swerving across the highway.

Mildred Folterman testified on direct examination that as the bus approached the bridge on which the collision occurred it was traveling at the rate of approximately 50 to 55 miles per hour, and that it entered upon the bridge at about the same rate of speed at which it was going on the road. On cross examination she testified in answer to the question as to whether her statement that the speed was about 50 to 55 miles an hour was really nothing but a guess, "Well, that's all I have ever guessed at the speed."

Later, in answer to the question "And, you are not intending to say or undertaking to say at what speed or give any estimate you would wish to be understood as accurate as to what the bus was making?", she testified: "I don't know the exact number."

On re-direct examination she testified: "I wasn't reading this paper all the time;

I was glancing at different things, and the last thing I can remember I was looking at was 'Nancy.'"

In the case of Giannukes v. Sfiris, 125 Tex. 354, 81 S.W.2d 999, it is said that any person of ordinary intelligence and experience, who has had opportunity for observation, is a competent witness to express an opinion or estimate of the speed at which an automobile or other vehicle might be traveling.

In the case of Humphries v. Louisiana Railway & Irrigation Co. of Texas, Tex. Com.App., 291 S.W. 1094, it was held that "no special qualification is necessary to equip a witness to testify other than everyday experiences."

As authority for its position, the opinion, quoting with approval from Gulf, Colorado & Santa Fe Railway Company v. Bell, 24 Tex.Civ.App. 579, 58 S.W. 614, 621 (writ of error refused), said: "The objection to the court's allowing witnesses Key and Collins to state their opinion as to the speed of the train on the night of the collision is not well taken. The objection that they were not in a position to know the fact goes to the weight of the evidence, and was for the jury."

" * * * the rate of speed of moving vehicles can usually be determined only by the opinions of witnesses, whether experts or not. * * * The rule is well established that any person of ordinary intelligence is competent to testify to the speed of vehicles observed by him." Merchants' Transfer Co. v. Wilkinson, Tex. Civ.App., 219 S.W. 891, 892.

The following authorities are in accord with the rule above announced: Fort Worth Structural Steel Company v. Griffin, Tex.Civ.App., 63 S.W.2d 887; Texas Employers' Insurance Association v. Beckworth, Tex.Civ.App., 42 S.W.2d 827; Rose v. O'Keefe, Tex.Com.App., 39 S.W.2d 877.

It follows that the result of this appeal must depend upon whether this record contains evidence sufficient in law to have justified the jury in finding that the minor plaintiff Mildred Folterman's injuries properly resulted from the negligence of appellant in the particulars found by the jury in this case.

Mildred Folterman had been on the bus from the time of its departure from Brenham and had had ample opportunity to observe its speed. The fact that she had been looking at the comic strip "Nancy" at the time the bus entered the bridge does not, we think, militate against the admissability of her evidence, and the question as to the weight to be given the evidence was for the jury. Under the above authorities the fact that she had had an adequate opportunity to form an opinion as to the speed of the bus as it proceeded along the highway, coupled with the fact that she did not note an application of the brakes or any change in its speed would, we think, entitle her to an opinion as to the speed of the bus, and it was the province of the jury to give her testimony the weight to which it was thought to be entitled. She testified that the bus was being driven at the rate of 50 to 55 miles per hour at the time of the accident. Such rate of speed was beyond the legal speed limit, and was negligence as a matter of law. The jury further found, on what we deem to be adequate testimony, that the driver of the bus did not slacken its speed on approaching the bridge; that he was driving at a greater rate of speed than a prudent and cautious person engaged in the carrying of passengers would have operated it under similar circumstances, and at such a speed as to endanger the lives and limbs of passengers, and that the operator of the bus failed to keep it under such control as it would have been kept by a prudent person engaged in the carrying of passengers, and that each of these acts by the operator of the bus was a proximate cause of the collision and was negligence as that term was defined in the court's charge.

Each of the above issues was, we think, raised by the evidence and the finding of the jury on the issues was sufficient to support the judgment rendered.

Appellant's contention that the amount of damages awarded Mildred Folterman and Fritz Folterman for the loss of her services were excessive cannot, we think, be sustained. Both Dr. James A. Brown and Dr. B. T. Van Zandt, witnesses for appellees, testified that Mildred Folterman received a skull fracture with attendant brain injury, and a serious back injury, and that much of these injuries were permanent.

Dr. Brown testified that she was confronted with the probability of a serious operation to her back and spine.

The measure of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its own facts, and considerable discretion and latitude must necessarily be vested in the jury. Peden Iron & Steel Co. v. Claflin, Tex.Civ.App., 146 S. W.2d 1062, 1064; Pure Oil Co. v. Crabb, Tex.Civ.App., 151 S.W.2d 962, error refused for want of merit; Leyendecker v. Harlow, Tex.Civ.App., 189 S.W.2d 706.

It follows that the judgment of the trial court must be in all things affirmed.