## COMMERCE REALTY CO. v. McELVEY et al.

### No. 12404.

Court of Civil Appeals of Texas. San Antonio.

June 11, 1952.

Rehearing Denied July 16, 1952.

Moursund, Ball, Moursund & Bergstrom, San Antonio, for appellant.

Arthur A. Domangue, Harold D. Putman, San Antonio, for appellee.

POPE, Justice.

Plaintiff, while walking along a public sidewalk abutting defendant's building, tripped on a metal covering as it was being pushed open by a sidewalk freight elevator that was rising from the basement. A jury convicted the building owner of negligence, and this is an appeal from a judgment in plaintiff's favor.

The Commerce Realty Company is the owner of the Aztec Building in San Antonio. The back of that building extends along the south side of Crockett Street and there is a public sidewalk between the street and the building. Metal lids covered an elevator shaft that extended down to the basement of the building, and, according to the evidence, when the elevator was not in use the lids properly and safely covered the opening. The elevator was not defective mechanically. There were no defects in the coverings and they were flush with

the sidewalk. In that situation, the coverings were safe for pedestrians and presented no hazard of any kind. However, when the elevator would rise from the basement, it was so equipped that it would push against the bottom of the metal lids and thrust them upward so the elevator could come above the sidewalk.

On the side of the building beside the coverings was printed in large letters, "Notice. Freight Elevator May be Used 8 A.M. to 11 A.M. Use Commerce Street Stairway after 11 A.M., Building Manager." As a warning to pedestrians, there was a bell installed on the side of the building over the sidewalk. It required manual operation by means of a push button in the basement near the entrance to the elevator. There was also a sign in the basement outside the elevator that stated: "Notice, this car is not to be operated at any time without a man on sidewalk to warn pedestrians." Access to the elevator could be gained only by going inside the Aztec Building, down to its basement, and proceeding along a corridor to the bottom of the shaft.

At about 10 o'clock on the morning of September 11, 1950, Mrs. Jewel McElvey, was walking along the Crockett Street sidewalk, and as she walked across the metal lids they commenced to rise. She stumbled as the lids opened and suffered injuries for which the jury awarded her $6,100. The jury convicted the owner of negligence, (1) for failing to station a person on the sidewalk to warn pedestrians, (2) for using insufficient warning devices, and (3) for failing to use reasonable safeguards to prevent unauthorized persons from operating the elevator.

 The finding that the owner failed to use safeguards against unauthorized persons' operating the elevator assumed that unauthorized persons operated the elevator at the time of the accident. This is not supported by the evidence, and there is no proof of any kind that unauthorized persons were present or operating the elevator. There is proof of its operation, but the identity of the person is not established. The owner leased a portion of the basement for the operation of a cafe and another portion to a candy company. Those and other tenants of the building had the right to and did use the freight elevator for their own purposes whenever they desired, and that was usually during the time that the accident occurred. The building owner also retained the right to use the elevator, and that use was ordinarily at night for the removal of trash from the building. The owner denied that it ever used the elevator in the morning, and the proof is that neither the owner nor its agents, servants and employees were actually operating the elevator when the accident occurred. Certainly no more than a surmise or a scintilla of evidence connects the owner with the actual operation of the elevator at the time of the accident. But there are circumstances from the proof that indicate some tenant was using the elevator. There was also proof that persons making deliveries to the tenants, by going into the basement, could, and sometimes did, operate the elevator. The tenants were not named as defendants.

An owner who retains control over a sidewalk elevator and enjoys the privileges of its use must also bear the burden of a duty that accompanies that privilege. "The rules governing the liability of the owner of leased premises for personal injuries sustained on the premises, as affected by the question as to who had control of the premises, or whether the tenant had exclusive posession have been applied quite generally in determining the owner's liability where the injury was occasioned by an appurtenance or contrivance placed in the highway for use in connection with the leased premises." See Note, 160 A.L.R. 830. "This duty rested upon the defendant, who had acquired a special privilege, acceptance and enjoyment of which had charged her with the special duty to the public of maintaining the coal hole at all times in a safe condition and properly guarded. She could not avail herself of this privilege without discharging the duty. The two were at all times coexistent, and she could not absolve herself from the liability thus created by delegating the performance of the duty to another." Hart v. McKenna, 106 App.Div. 219, 94 N.Y.S. 216, 219; Westheimer Transfer &

Storage Co. v. Houston Bldg. Co., Tex.Civ. App., 198 S.W.2d 465; Brown Hotel Co. v. Sizemore, 303 Ky. 431, 197 S.W.2d 911; Du Val v. Boos Bros. Cafeteria Co., 45 Cal. App. 377, 187 Pac. 767; McCreech v. Howard R. Ware Corp., Sup., 53 N.Y.S.2d 192.

From the facts of this case, the owner and its tenants each possessed control over the elevator, and they had full knowledge of the danger to pedestrians. Pedestrians, on the other hand, had no knowledge of what occurred in the sub-surface, or when the elevator would strike the covering. "The plaintiff had full right to rely upon and assume that it was so properly operated and guarded that she could walk across its closed doors with safety in order to enter defendant's place of business, as her intention was. Under such circumstances, we think it was for the jury to decide as to whether the defendant was negligent in failing to properly maintain and guard its elevator, so as to permit a stranger to enter upon and operate it, and whether defendant had performed its duty in regard thereto, so as to afford reasonable protection to travelers upon the highway." Rosenholz v. Frank G. Shattuck Co., 112 Misc. 468, 183 N.Y.S. 23, 25; Coffey v. City of Carthage, 186 Mo. 573, 85 S.W. 432; Salt Lake City v. Schubach, 108 Utah 266, 159 P.2d 149, 160 A.L.R. 809.

■■■ Those possessing knowledge of dangers to pedestrians and having control over an elevator and the danger are charged with a duty to provide protection against the dangers. "It appears to us, however, that since such use is fraught with unusually dangerous potentialities unless properly guarded and maintained, the operator should be held upon the most elementary principles to the exercise of such degree of diligence in each case as may be reasonably commensurate with the inherent dangers incident thereto." Norwood Bldg. Inc. v. Jackson, Tex.Civ.App., 175 S.W.2d 262, 265. From these authorities we conclude that the duty is one that reaches not only to the actual operator but also to those who retain control over the sidewalk elevator.

■■■ The evidence supports the jury findings that there was negligence by reason of using insufficient warning devices and in failing to station a person on the sidewalk to warn pedestrians. The bell was in good condition, but the pedestrian denied that she heard it. The bell warning was arranged so that it would ring while the elevator was at the bottom of the shaft. Between the time it rang and the time it ascended to and struck the bottom of the covering, required the passage of some time. A pedestrian who stepped on the covering simultaneously with the contact by the elevator would be some distance removed from the covering at the time the operator rang the bell by pushing the button at the bottom of the shaft.

But, aside from this independent finding of negligence, the circumstances support the jury finding that the owner was negligent in failing to protect pedestrians by posting a guard on the sidewalk. Norwood Bldg. v. Jackson, supra; Anderson v. Caulfield, 60 App.Div. 560, 69 N.Y.S. 1027; Downey v. Low, 22 App.Div. 460, 48 N.Y.S. 207; French v. Boston Coal Co., 195 Mass. 334, 81 N.E. 265, 11 L.R.A.,N.S., 993; Ray v. Manhattan Light, Heat & Power Co., 92 Minn. 101, 99 N.W. 782; Jennings v. Van Schaick, 108 N.Y. 530, 15 N.E. 424; Salt Lake City v. Schubach, supra.

■■■ Plaintiff proved by her medical witness that before the accident she suffered from Buerger's disease and that the trauma to her feet, toes and shin suffered in the accident would aggravate that condition. The court first admitted this evidence and later granted plaintiff leave to file a trial amendment stating the pre-existence of the disease. The court also permitted the plaintiff to file a trial amendment increasing the amount of damages from $5,725 to $12,725. The defendant objected to each of these trial amendments. Plaintiff's original petition alleged that she sustained severe and serious injuries to her right foot and leg. The defendant answered by a general denial only and sought no fuller pleadings of the injuries. In that state of the record, the evidence relating to the Buerger's disease was proper without any trial amendment at all. Pleadings do not compel a pleading of the evidence and one desiring fuller information

may gain it through exceptions. Rules 47, 90, T.R.C.P.; Pacific Employers Ins. Co. v. Gage, Tex.Civ.App., 199 S.W.2d 537; Pena v. Snare, Tex.Civ.App., 196 S.W.2d 207; Connor v. Boyd, Tex.Civ.App., 176 S.W.2d 212.

We are of the opinion that the court's action was not arbitrary, but was within the limits of its discretion. Davis v. National Acceptance Co., Tex.Civ.App., 233 S.W.2d 321.

We have examined the other points and overrule them.

The judgment is affirmed.