CHEMICAL EXPRESS, Appellant,

v.

Calvin Eugene COLE et al., Appellees.

No. 15749.

Court of Civil Appeals of Texas.

Dallas.

Jan. 20, 1961.

Rehearing Denied Feb. 17, 1961.

**774**

---

Leachman, Gardere, Akin & Porter and Edward E. Crowell, Jr., Dallas, for appellant.

Hill, Brown, Kronzer & Abraham, Houston, Woodgate, Richards & McElhaney, and Charles C. Kirkpatrick, Dallas, and Emmett Cole, Jr., Victoria, for appellees.

DIXON, Chief Justice.

Appellee Calvin Eugene Cole brought suit against appellant Chemical Express for damages for personal injuries sustained by appellee on July 7, 1958 when a pick-up truck he was driving was struck in the rear by a truck being driven in the same direction by an employee of Chemical Express, the employee being then in the course and scope of his employment.

American General Insurance Company, workmen's compensation carrier for Cole's employer, intervened to recoup for pay-

ments made to and in behalf of Cole. It was stipulated that the insurance company was entitled to receive $1,023.45 out of appellee's recovery.

After trial before a jury judgment was rendered in favor of appellee for $66,000 for past and future physical pain and mental anguish, past loss of earnings, and future diminished earning capacity; $2,000 for past doctor, hospital and medical expenses; and $7,000 for probable future doctor, hospital and medical expenses, a total recovery of $75,000.

Appellant's first point on appeal asserts that the court erred in admitting evidence over appellant's objection concerning injury to appellee's kidney and ureter, or tube leading from the kidney. The grounds of objection were that there were no pleadings to support such evidence.

In reply to appellant's first point appellee contends that the challenged testimony was admissible because the ureter and kidney injuries were the direct result of specific injuries alleged and proved.

Appellee's pleadings in regard to his injuries, which pleadings were not excepted to, were as follows:

"Your plaintiff would show that he was caused to be thrown about in the vehicle in which he was riding. He was injured and damaged about his neck, spine and surrounding parts. He suffered a nervous shock. By reason of his injuries and the effects thereof, your plaintiff has been caused to suffer severe physical pain and mental anguish, and in all reasonable probability will continue to suffer from physical pain and mental anguish for a long time in the future, and probably for the balance of his life."

In his original petition filed December 8, 1958 appellee sued for $50,000, but in his second amended petition filed March 27, 1959 he enlarged his prayer to $75,000.

The evidence of which appellant complains was given by Dr. J. C. Hohf of Victoria, Texas, who along with other doctors offices in and uses the hospital facilities of Hohf Clinic in Victoria. Dr. Hohf saw and began treating appellee Cole November 20, 1958, several months after Cole was injured. However, the Doctor had available the earlier x-rays pictures and medical histories made in connection with treatment of Cole by other doctors.

Dr. Hohf testified that Cole had complained of headaches and pain in his neck, shoulders, left leg and lower back and some pain higher up in his back. Among the injuries to the spine disclosed by x-ray films was a fracture of the transverse process of the third lumbar vertebra. Earlier diagnosis by Dr. Hohf attributed the pain higher up in the back to this fracture and the accompanying tearing of the large muscle in the area where the fracture had occurred.

But Cole had later renewed his complaint of pain higher up in his back. Additional x-ray pictures were made and a pyelogram was run on September 2, 1959. It was then discovered, according to Dr. Hohf's testimony, that in healing the fracture had developed scar tissue which had engaged the left ureter, or tube leading from the kidney to the bladder, causing very serious involvements which prevented the ureter from functioning properly.

Since this is the testimony of which appellant complains in its first point on appeal, we deem it appropriate to quote some, though by no means all of the pertinent testimony:

"Q. Doctor, * * * let's talk about the kidney problem, do you have any evidence that you can offer in either of these films of any objective evidence of trouble at that area? A. Yes, we do, and I am ashamed to admit that it was not picked up sooner. * * * Mr. Cole changed his symptomatology upon his visit to the clinic recently, in that previously he had a pain in his neck and stiffness, and so forth, as already related to you, plus the low back pain, and an episode of pain that went down the leg, which I finally cleared up satisfactorily, leaving him only a low back pain, but the next thing was, he started to complain of pain up higher in his back. Now, he had some pain up through here, but it was interpreted to be due to the tearing of that large muscle, where this one little small transverse process was fractured, and, therefore, no great credence was paid to it. But, on examining the man, he had tenderness on what we call the kidney punch sign, where we hit him over the kidney, and it was extremely painful. In general, that means we have definitely, in going back over the man's records, on each hospital admission, on a routine urinalysis on hospital admission, he had always showed a microscopic hemoturic, he had showed blood in the urine. That was noted on the first hospital admission, but no particular credence was paid to it because this man had sustained a rather severe back injury, which would not be incompatible with some blood in the urine, particular microscopically. But in going back over and looking at it, he had * * *. I paid proper attention to it, particularly in view of the fact that he now showed up with tenderness in this area. Therefore, x-rays of his kidneys were taken with the idea that there was a reasonable possibility. * * *

"Q. * * * any testimony you are going to give with reference to any problem of the kidney, is it or is it not in your professional opinion related to the injury the man had received to his back? A. That is the next sentence. With the idea that if the man sustained a fracture of the third lumbar transverse process of the left side, there had to be injury, tearing, disrupting of the ligaments and mus-

cles, one of the largest ones in this area, where the ureter or tube comes from the left kidney to the bladder, had to traverse over that particular muscle, and in one small place there, even through it. Therefore, such an injury is capable of damaging the tube and thereby damaging the kidney secondarily, in view of that, intravenous pyelograms were taken, upon review of the man's record, showing that he had blood in his urine and had it ever since the first day we saw him. * * *

"Q. Why does this pipe run closer to the backbone than that other pipe? A. It has been pushed or pulled over here by scar tissue from the injury to the back.

"Q. All right, in your opinion, is that a result of this accident that we are trying this lawsuit over? A. Yes, sir. * * * you will notice that we do see the tube here for the first time, but it follows a straight course down, whereas this one is sucked into this area line of the transverse process. * * * this man is not having a static condition of this kidney, it is something that is progressing, as the scar tissue contracts, as time goes on."

We are unable to agree with appellant's contention raised in its first point on appeal. In an analogous case a plaintiff alleged various injuries caused by an explosion, but did not expressly complain of his eyes. In answering certified questions our Supreme Court held that the evidence of injury to eyes was admissible under the pleadings. We quote from the opinion: "The court has never departed from the decision * * * in M. P. Ry. Co. v. Mitchell, 72 Tex. 171, 10 S.W. 411 that the effect of precise injuries alleged may be proven. * * * The principle involved does not change with the portion of the body affected." (Emphasis ours.) C. L. Smith Oil Co. v. Riggs, 111 Tex. 173, 230 S.W. 139, 140. Other authorities are cited in the above opinion. See also Commerce Realty Co. v. McElvey, Tex.Civ. App., 250 S.W.2d 931, 934, 935 and York Transport Co. v. Moreland, Tex.Civ.App., 224 S.W.2d 899, 902.

In the instant case the record shows that Dr. Hohf's new findings were made on or about September 2, 1959. The trial began on September 8, 1959. Appellant through its attorney appears to have been informed of the new medical findings. This was short notice, but it was in time for appellant to have appellee examined by a doctor, Dr. David Henry, of appellant's own choosing, who testified in behalf of appellant. Dr. Henry, who specializes as an orthopedic surgeon, not only examined appellee but examined also x-ray pictures made earlier from which Dr. Hohf testified. Dr. Henry found a fracture of the transverse process, but stated that it was an undisplaced fracture which would not set up scar tissue. Consequently it was his opinion, contrary to that of Dr. Hohf, that the fracture did not result in any tearing of the large muscle which in turn could result in scar tissue which might have attached itself to the ureter. We mention this part of the record because it seems to show that appellant was not taken by surprise at the trial by Dr. Hohf's testimony in regard to the kidney and ureter involvements resulting directly from appellee's injuries in the automobile collision.

Appellant's first point on appeal is overruled.

■ In its second point on appeal appellant says there were no pleadings to support the testimony of appellee's mother that in her opinion there had been a change in appellee's personality following the injuries sustained by him on July 7, 1958.

We see no merit in this point. Appellee in his petition alleged that he suffered a nervous shock, and that by reason of his injuries he had been caused to suffer severe physical pain and mental anguish

which would continue for a long time in the future, probably for the balance of his life. Under such pleadings the challenged testimony was properly admitted. Appellant's second point is overruled.

■ In its third, fourth and fifth points appellant says that it was error for the court to allow appellee's counsel to argue the value of appellee's pain and suffering by the hour or by the day or by any other mathematical formula or standard. While there is some conflict in authority, this matter has been passed on adversely to appellant's contention in a number of jurisdictions, including Louisiana & A. Ry. Co. v. Mullins, Tex.Civ.App., 326 S.W.2d 263; Continental Bus System v. Toombs, Tex. Civ.App., 325 S.W.2d 153; J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786; Imperial Oil, Ltd. v. Drlik, 6 Cir., 234 F.2d 4; Johnson v. Brown, Nev., 345 P.2d 754, 759; Jones v. Hogan, Wash., 351 P.2d 153; Ratner et al. v. Arrington, Fla.App., 111 So.2d 82; and 60 A.L.R.2d 1347. In Ratner et al. v. Arrington, supra, cases bearing on the question have been collected by the Florida Court. Appellant's third, fourth and fifth points are overruled.

■ In its sixth point appellant complains of the argument of appellee's counsel that appellee Cole (who was 26 years old at the time of the accident) had over 40 years of normal life expectancy.

The record shows that the following proceedings took place:

"Q. * * * in your professional judgment, based upon reasonable probability, would there be a requirement of future and additional medical expense, for these conditions? A. Yes, there will; this man will have difficulty having torn up two segments of his back, as badly as he did, with a secondary involvement of the kidney system there, he will have to be watched for the remainder of his life, and it is a little difficult to arrive at any

particular figure that he would spend during that period of time; I wouldn't even know how long he would live, but saying, he lived his expectancy of 68½, and he spent the average, in the beginning it would be a little heavy, and it would get a little lighter, and then toward the end, it will get a little heavier again, $10 a month, or $120 a year, if you will; that is a figure, I have to kind of pick out of the air; I don't have a crystal ball up here.

"Mr. Porter: Your Honor, I think he is guessing, I don't think that the Court permits guessing.

"The Court: Yes, I sustain it, yes, it has to be in all reasonable medical probability, is the proper measure.

"Mr. Porter: I ask the Court to instruct the jury not to consider the Doctor's statement.

"The Court: Well, reframe your question, Mr. Hill, of course, the jury will not consider guesses, they must consider * * *.

"Q. (By Mr. Hill) Doctor, based upon reasonable probability, do you have a professional opinion as to whether there will be a need for medical expense in the treatment of this man's injuries, received in this collision, over and above the sum of $2100 that you allocated for surgery? A. Yes, that is not the way you asked the question, before. Now, reasonable probability, $120 a year."

Appellant contends that it objected to the Doctor's statement, "saying he lived his expectancy of 68½" and that the court sustained the objection, therefore it was error for appellee's counsel to argue that appellee had a normal expectancy of over 40 years.

We are unable to agree with appellant. It seems to us that appellant made no objection to the above-quoted statement of

"expectancy of 68½". Appellant's objection was obviously levelled at the Doctor's statement, "it will get a little heavier again, $10 a month. or $120 a year, if you will; that is a figure, I have to kind of pick out of the air I don't have a crystal ball up here." In this latter statement the Doctor was certainly guessing as he himself admitted in substance.

The trial court evidently took the same view as we do regarding to scope of appellant's objection, for later in the trial the court refused to sustain appellant's objection to the argument of appellee's counsel when counsel advised the jury that according to the evidence appellee had more than forty years of normal life expectancy. That such objection to appellee's argument was made by appellant and that the court refused to sustain such objection is asserted by appellant in paragraph XXXV of its amended motion for new trial.

Furthermore, it has been held that when injuries are permanent and the age of the injured person is given, a jury may reach its own conclusions as to the probable duration of life from their knowledge of such things and from evidence as to the party's health, physical condition and such other facts as are before it, though no evidence of life expectancy is presented. Dallas Ry. & Term. Co. v. Tucker, Tex.Civ.App., 280 S.W.2d 600, 610; Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614, 616; Hemsell v. Summers, Tex.Civ.App., 138 S.W.2d 865, 869; Southland Greyhound Lines v. Cotten, Tex.Civ.App., 55 S.W.2d 1066, 1071, reversed on other grounds 126 Tex. 596, 91 S.W.2d 326; and 17 Tex.Jur.2d 317. Appellant's sixth point is overruled.

■ Appellant's seventh point attacks the award of $2,000 for past doctor, medical and hospital expenses in the absence of pleadings or evidence to support such amount.

In its amended motion for new trial appellant does not allege error on the ground that there were no pleadings to support the amount of the award, so that phase of appellant's complaint passes out of the case. Appellant did allege, however, that there was no evidence, or in the alternative there was insufficient evidence to support the amount of the award, which was therefore excessive. The evidence of past doctor, medical and hospital expenses lists items totalling only $1,913.65. It follows that the award was excessive in the amount of $86.35. Appellant's seventh point will be partially sustained as indicated above, but otherwise will be overruled.

■ In its eighth point appellant attacks the award of $7,000 for future probable doctor, medical and hospital expenses. In his argument to the jury appellee's counsel argued for $2,189 for the next three years following the trial and $120 per year for 40 years, which would amount to $4,800. The $2,189 plus the $4,800 would make a total of $6,989, or $11 less than the $7,000 award. But appellant goes further, it says that under the evidence only $2,189 should have been allowed for the next three years hence appellee's counsel if he had proved a 40 year-life expectancy, would be entitled to $120 per year thereafter for only 37 years, which would amount to only $4,440. The $2,189 for the first three years plus the $4,440 for the next 37 years total only $6,629, or $371 less than the jury awarded.

We do not agree with appellant. In the first place the jury is not bound by the statistical analysis of the evidence made by the appellee's counsel in his argument. In the second place Dr. Hohf testified that appellee's life expectancy was 68½, by which he obviously meant that appellee at 26 years of age normally could expect to live until he was 68½ years of age. This would be a greater life expectancy than 40 years. And in the third place, as is held in cases and authorities cited in our discussion under appellant's sixth point, the jury is not bound by evidence of life expectancy, but may reach its own conclusion in that regard if the injured person's age

is given and if there is evidence that the injuries sustained are permanent. Appellant's eighth point is overruled.

 In its ninth, tenth and eleventh points appellant charges error in awarding $66,000 for past and future physical pain, past and future mental anguish, past loss of earnings and future diminished earning capacity because (9) there is no evidence to support such sum, (10) the evidence is insufficient to support such sum, and (11) the award of $66,000 was excessive.

Appellant in its brief says, "such excessive verdict doubtless resulted from the erroneous evidence and argument concerning the purported kidney injury, the erroneous argument in reference to appellee's life expentancy, and the prejudicial argument as to the value of physical pain and mental anguish by the hour or by the day". These three alleged errors were considered by us in connection with appellant's first, third and fourth points on appeal, each of which points was overruled. Consequently we cannot accept appellant's argument as a basis for holding the award of $66,000 as excessive.

The statement of facts in this case is 499 pages in length. Much of it is taken up with the record of evidence in regard to the nature and extent of appellee's injuries. He testified that he has been hospitalized five times since the accident. There is evidence that he obtained employment in several instances, but was unable to perform his duties because of his physical disabilities. At the time of the trial he was still under a doctor's care. We quote excerpts from the testimony of Dr. Hohf, who is now treating appellee:

"Q. Do you contemplate continuing him as a patient after this lawsuit is over and done with? A. The man will have to be followed on the basis of the primary two things. We might reiterate here that the patient is the most concerned about this pain up here in his neck and upper back, which I am not very concerned about, because, although it is bothersome, it is not going to make the man ill, or incapacitated, but the pain that he is having in his back, is very likely not one to progress, but is likely to start pressure on another nerve in his leg, and in all probability, the man will have to have a spinal fusion to stabilize that back, to stop that process. Further, and above that, the kidney process that we are looking at here, is very likely to undergo further scar tissue contraction, all scar tissue contractions, * * * we would not be satisfied with the man's condition for a period of five years, so we will have to watch this kidney all that time, that can be for five years; if it gets too narrow, something will have to be done to open it up. * * * the man is going to have difficulty with his back in the way of pain; I am speaking of things that are going to cripple him. To start, the pressure, that the nerve in the leg is going to start some weakness, and paralysis, of the leg, and the kidney situation, such as that, can kill him. * * *

"Q. * * * do you have a professional opinion * * * as to whether or not this man has suffered any physical pain, as a result of these injuries from the time he was hurt up until the date of this trial? A. Yes he has suffered severe pain.

"Q. Do you feel that that pain has been with him most of the time, or just less than half, or what would be your professional opinion about it? A. It has been with him all the time. * * * he does have considerable worry, on his mind, because I am a firm believer in a patient understanding as much about the case as I am able to tell him about it, viewing the x-rays, in the light of all present medical knowledge, and the man has been informed, he has had serious injuries, and that he has got difficulties here, and in all reasonable probability; can-

not ever return to his former job, which is what he is trained for. Sure, he is worried.

"Q. Do you feel that he has been able, since the accident, during that period of time, to pursue any gainful employment for which he is presently qualified? A. Well, I know that he has tried several various and sundry things, filling station, and a few other things, but he just couldn't make it.

"Q. In your opinion, with the condition he has been in, has he been in any physical condition to pursue any work that would require any substantial degree of physical effort? A. No. * *

"Q. * * * have you formed any opinion with which you are satisfied as a doctor based upon reasonable medical certainty, and based upon facts of the case as you believe them to be, as to whether or not this man will have any permanent injuries as a result of this wreck? A. Yes, sir.

"Q. What is that opinion, Dr. Hohf? A. He has permanent injuries to the back, to the left ureter, that is the tube draining the left kidney, and to the neck. * * * He is going to have pain in that back, whether it is fused, or not, because of the same thing, tearing up that muscle and so forth, and fibrotic changes, whether you operated or not, it is going to hurt him, up and above all, his kidney will kill him if it gets worse."

There is much other evidence in the record indicating that appellee's injuries are serious and permanent, but we shall not go further into detail.

 In determining whether a verdict is excessive the evidence must be viewed in a light most favorable to the award. Green v. Rudsenske, Tex.Civ.App., 320

S.W.2d 228 (citing cases). Courts are reluctant to disturb the findings of a jury on the grounds of excessiveness of the award if there is any evidence to sustain the award. Texas & N. O. R. Co. v. Flowers, Tex.Civ.App., 336 S.W.2d 907, 917; Geo. C. Vaughan & Sons v. Dyess, Tex.Civ.App., 323 S.W.2d 261, 265; Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614, 616; Bee Line Coaches v. Folterman, Tex.Civ.App., 207 S.W.2d 986, 989.

We cannot say that there is insufficient evidence to support the jury verdict in this case, therefore, we cannot hold that the verdict for $66,000 is excessive. Appellant's ninth, tenth and eleventh points are overruled.

In sustaining appellant's sixth point in part, we held that the award of $2,000 for past doctor, medical and hospital expenses was excessive in the amount of $86.35. If appellee will file a remittitur of $86.35 within 15 days from this date, the judgment will be affirmed for $74,913.65. Unless such remittitur is filed we shall reverse the judgment and remand the cause for another trial.

WILLIAMS, J., not sitting.

### On Remittitur and Rehearing

DIXON, Chief Justice.

Appellee Cole has filed a remittitur in the amount of $86.35 plus any accrued interest on said amount.

Therefore, the judgment will be reformed to allow a total recovery of $74,913.65. After deducting the amount of the judgment in favor of American General Insurance Company, $1,023.45, an amount of $73,890.20 is left as the judgment in favor of appellee Calvin Eugene Cole.

As above reformed the judgment is affirmed.